[No. 37960-7-I.    Division One.    April 28, 1997.]

JIM FERNANDO, *Respondent,* v. BERNHILD M. NIESWANDT, *Appellant.*

*Morgan M. Witt (Christopher P. Curran*, of counsel), for appellant.

*G. Brian Paxton*, for respondent.

AGID, J. — Bernhild Nieswandt and Jim Fernando separated about eight months after their child, A., was born. Nieswandt moved from their LaConner home to her parents' home in Portland. Fernando brought a paternity and custody suit to secure his visitation rights. The trial court entered a permanent parenting plan giving him one five-day visit each month plus additional time at holidays. Nieswandt appeals, arguing that the plan was not supported by substantial evidence and that the trial court erred by: (1) relying on evidence outside the record; (2) awarding Fernando attorney fees; and (3) reducing his child support payments based on his obligations to other children. We disagree and affirm.

## FACTS

Nieswandt and Fernando lived together in LaConner, Washington, for over two years and had one child, A. In February 1992, Nieswandt decided to leave LaConner and return to Portland, Oregon, to live with her parents and attend the Western Culinary Institute. She brought A. to Portland with her. In June, Fernando filed a petition for determination of paternity and establishment of a parenting plan.

In preparation for trial, Fernando petitioned the court to appoint a guardian ad litem. The court appointed Eileen Butler, a member of the Washington State Bar who has limited her practice to guardian ad litem work. Butler met with A. at Fernando's house, and also observed her with Nieswandt. In addition, she consulted Nieswandt's expert, Dr. Friesen, and reviewed reports written by Dr. Young, a counselor who saw all parties. She interviewed Nieswandt about her reports that A. behaved differently after she visited with her father and spent some time with them immediately after a visit. She testified that she did not observe any difference in A.'s behavior after the visits. In her report, Butler recommended that Nieswandt be the primary residential parent. But she also recommended that Fernando have visitation because A. had a strong

bond with her father and his other children and, as a mixed-race child, she needed to learn about her father's culture as well as her mother's. Butler recommended that A. visit with her father in LaConner four to five days per month and that Fernando have liberal and frequent visitation with her in Portland.

In response to Butler's recommendations, Nieswandt presented three experts. Dr. Bohlin, a family therapist, recommended against visitation as too traumatic for A. He also testified that guardians ad litem are generally not qualified to make recommendations for the care of a child because they have no scientific training. Walt Friesen, a marriage and family counselor, testified that his observations of A. after visits with her father lead him to believe that she was not emotionally bonded to Fernando and that she acted out upon her return from these visits because they were disturbing to her. Dr. Reilly, a psychologist, testified that A. suffered from depression after her visits with Fernando, resulting from post-traumatic stress disorder. He opined that the visitation would damage A.'s relationship with both parents.

The trial court rejected the experts' testimony and adopted Butler's recommendations. It found that both parents were competent and that nothing in the record, including videotapes of A. becoming upset at being put in the car to go to Fernando's house, convinced him that A. was traumatized. It also found that much of the testimony of Nieswandt's experts was contrary to the standards underlying Washington's Domestic Relations Act, RCW 26.09. The parenting plan ordered five-day visitations in LaConner each month until A. began school, as well as two two-week visits in the summer and half of Christmas break. The court also granted Fernando's request for attorney fees and reduced his child support payments because he supported a child from his last marriage.

## DISCUSSION

■■ Nieswandt first argues that the trial court abused

its discretion by allowing the guardian ad litem to testify to her recommendations. She argues that the testimony was an inadmissible opinion under ER 702 because Butler is not an expert. A trial court may appoint a guardian ad litem to make recommendations to the court about appropriate parenting arrangements. RCW 26.09.220, 26.12.175. The guardian is expressly permitted to interview doctors or experts who have seen the child in the past and report those impressions to the court. The guardian need not have any specific training. Rather, the statute requires that each guardian ad litem provide information about their background to the family court program. RCW 26.12.175(3). If a party believes that the guardian is not qualified to render opinions in the matter, that party may move to substitute the guardian within three days of the appointment. RCW 26.12.177(2)(c).

The statutes which authorize the appointment of the guardian ad litem authorize the family courts to hear the opinions of a witness who would not be a traditional expert under ER 702. A guardian ad litem is not appointed as an "expert." Rather, she is appointed to investigate the child and family situation for the court and make recommendations. In effect, she acts as a neutral advisor to the court and, in this sense, is an expert in the status and dynamics of that family who can offer a commonsense impression to the court. But the court is also free to ignore the guardian ad litem's recommendations if they are not supported by other evidence or it finds other testimony more convincing.

Butler has no special training in child parenting matters except that she has several small children and took legal education courses on guardian ad litem work. However, her recommendations are expressly admissible under RCW 26.12.175(1)(b). She developed her opinion about the appropriate visitation after observing A. with each of her parents and conducting interviews with her treating therapists and Nieswandt's experts, as the statute permits. The statute clearly anticipates that the guard-

ian will testify about her recommendations. Therefore, the court did not abuse its discretion when it considered Butler's testimony.

Nieswandt also argues that the parenting plan was not supported by sufficient evidence because the trial court relied more heavily on Butler's recommendations than those of her experts. She admits that the trial court considered the testimony of the experts and commented on it during its oral ruling, but argues that the court could not have found the testimony of the untrained guardian ad litem was more convincing than that of the three expert witnesses.

■■ This court reviews a trial court's findings for a parenting plan for abuse of discretion. *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543, *review granted*, 130 Wn.2d 1001 (1996). The trial court's findings are given great weight on review because it is in a unique position to observe the parties and their demeanor. *Schneider*, 82 Wn. App. at 476. Therefore, we will not disturb the trial court's findings so long as they are supported by "ample evidence." *Schneider*, 82 Wn. App. at 476 (citing *In re Marriage of Kovacs*, 121 Wn.2d 795, 810, 854 P.2d 629 (1993)).

In addition to the testimony from the experts, the trial court heard two days of testimony from A.'s parents and the guardian ad litem. Its oral findings and conclusions demonstrated attention to the details of the testimony from both sides. It clearly rejected the recommendations of the experts as not supported by the other testimony, the standards for parenting plans under RCW 26.09.002, and the court's observations of A. The testimony supports the court's finding that A. was not traumatized by visiting her father and that she was bonded to him. The parenting plan is supported by ample evidence.

■ Nieswandt next contends that the trial court improperly considered evidence outside the record in fashioning the parenting plan. She argues that the trial judge imposed his personal experience and views into his

findings.[1] The judge did make several illustrative comments about his own experience on the bench and as a parent to explain his decision. However, the transcript does not reveal that he was in any way comparing this case to his own life to make a decision. Rather, he was acting as a trier of fact and applying common sense to the facts of this dispute to make a decision. When the judge is a trier of fact, illustrative comments phrased in the first person are not improper unless they evidence bias, prejudice, or other impropriety.

■ Nieswandt also argues that the trial court erred when it considered statutory guidelines even though the parties did not brief the court on the law and when it allowed the guardian ad litem to testify without hearing her qualifications. First, the trial court must consider the governing law when fashioning a parenting plan, even if the parties do not present it to the court. RCW 26.09.002 states a policy of developing a relationship between the child and each of the parents. It also states that the plan should reflect the best interests of the child. The court did not err when it considered the governing statute in making its decision; it would have been error not to. Nor did the trial court err when it took notice of Butler's qualifications without considering them on the record. The statute which permits the court to appoint a guardian ad litem establishes the qualifications as well. In addition, Butler's qualifications were in the court record, and the trial court had considered them prior to appointing her. The trial court did not improperly rely on evidence outside the record to reach its decision.

---

[1]Her argument stems from three comments. First, the court refused to find that a videotape of A. stiffening as she was put in a car seat was evidence that she suffered trauma as a result of visiting with Fernando. The judge stated "For heaven's sake, I had three children and ten grandchildren and a couple of great-grandchildren, and I'm telling you, I've seen that happen so many times. Just to deprive the child of some trivial little thing, and they'll stiffen their back or they'll swing or they'll throw something." Second, the court rejected the testimony of the experts, finding that, in his experience, an expert can be found to support any position. Third, the court stated that, in his experience, most children emerged from divorce "without any perceptible damage."

Nieswandt next contends that the trial court erred when it ordered her to pay $7,500 of Fernando's attorney fees. The court found that she spent a great deal of time and money arguing about settled law and thereby substantially increased Fernando's costs. In ordering the attorney fees, the court stated, "But I don't feel it was fair for Mr. Fernando, who is a very average middle-class citizen, to have to be somewhat impoverished because the respondent wants to go pioneering in the law." Nieswandt argues that the court erred because it found that Fernando was impoverished without hearing any testimony to support that finding.

RCW 26.26, the Uniform Parentage Act (UPA), governs Fernando's attorney fees request because he began this action to establish paternity and secure visitation rights. *See In re Marriage of T.*, 68 Wn. App. 329, 334, 842 P.2d 1010 (1993) (the UPA attorney fees provisions govern in cases arising under that act). An award of attorney fees under RCW 26.26.140, the costs provision of the UPA, is within the trial court's discretion. *Marriage of T.*, 68 Wn. App. at 335. We will not disturb the trial court's award unless it was manifestly unreasonable or based on untenable reasons. Looking at this record as a whole, we cannot say that the trial court abused its discretion. Nieswandt presented an extensive defense to Fernando's visitation request, and Fernando incurred significant additional fees responding to her defense. In addition, the amount of the award is not unreasonable.[2] We therefore affirm it.

Nieswandt's final contention is that the court erred when it granted Fernando a downward deviation in support based on his obligations to his child from a previous marriage, an obligation which he discharges by having

---

[2]At the end of oral argument, Fernando's counsel suggested that the attorney fees be offset by his child support payments. Support payments are the child's funds held in trust by the receiving parent. *Ditmar v. Ditmar*, 48 Wn.2d 373, 293 P.2d 759 (1956). Therefore, Fernando may not offset the payments to cover his personal attorney fees debt.

the child live with him. She argues that the costs of having a child live with you may not be considered in granting a downward departure from the presumptive support schedule. Under RCW 26.19.075(1)(e), the trial court is permitted to grant a downward deviation from the support schedule if the parent has "a duty of support" to children from other relationships. The statute does not define "duty of support." However, RCW 26.19.075(1)(e)(iii) states:

> When considering a deviation from the standard calculation for children from other relationships, the court may consider only other children to whom the parent owes a duty of support. The court may consider court-ordered payments of child support for children from other relationships only to the extent that the support is actually paid.

The statute distinguishes between "duty of support" and payments of "child support." Therefore, the logical interpretation of "duty of support" is that it means all support obligations, not merely payments of court-ordered child support. Under this interpretation, a trial court may deviate from the standard child support schedule based upon one parent's obligations to children from other relationships who live with them, so long as the parent fulfills the obligation.

After the trial court determines that there are grounds for a deviation from the presumptive schedule, its deviation is reviewed for abuse of discretion. *In re Marriage of Trichak*, 72 Wn. App. 21, 23, 863 P.2d 585 (1993). The trial court did hear testimony about Fernando's and Nieswandt's incomes. He found that Fernando has a monthly income of $1,794 and that Nieswandt could have an income of $1,238, but was voluntarily underemployed. He also found that Fernando had a support obligation to his two minor children from his previous marriage which was satisfied by having one child live with him. Therefore, the court slightly reduced Fernando's obligation to A. This reduction was not an abuse of discretion.

Finally, Fernando asks for attorney fees under

RCW 26.26.140 or RCW 4.84.185, which allow a court to award attorney fees incurred in responding to a frivolous appeal. An appeal is frivolous when "there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of any merit that there was no reasonable possibility of reversal." *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987) (citing *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 509, 716 P.2d 869 (1986)). While we affirm the trial court, we do not believe that the appeal was frivolous and deny Fernando's request.

Affirmed.

BAKER, C.J., and COLEMAN, J., concur.

Review denied at 133 Wn.2d 1014 (1997).