FILED
COURT OF APPEALS
DIVISION II

2013 OCT -1 AM 9: 10

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Marriage of: | No. 42990-0-II |
| JASON EHLERT, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MARIA SPURIA-EHLERT, | |
| Appellant. | |

BJORGEN, J. — Maria Spuria-Ehlert appeals the child custody determinations in a final parenting plan. She argues that the trial court: (1) failed to consider the statutory factors and instead based its ruling on an erroneous two-factor standard, (2) refused to consider the children's life in Australia, (3) ignored the guardian ad litem's recommendations, and (4) failed to award her attorney fees connected to the contempt order. Because the trial court failed to examine the statutory factors, we reverse and remand.

## FACTS

### I. MARRIAGE AND CHILDREN

Maria,[1] an Australian citizen, and Jason Ehlert, a Canadian citizen, met through their employment in 2002. They each moved to Washington, where they bought a house together. In 2005 Maria and Jason married in Australia, returned to Washington for about six months, and then moved to Australia. They have two sons, JE[2] and PE,[3] who were born in Australia and who

---

[1] We refer to the parties by their first names to avoid confusion; we intend no disrespect.

[2] We refer to children using initials to protect their privacy.

[3] JE was born on September 8, 2006. PE was born on May 31, 2008.

are Australian citizens. Jason also has twin boys from a prior marriage, who reside in Utah.

In 2007 the family traveled to the United States on a business trip. Upon arrival, authorities detained Jason because he had lived in Australia for more than a year and needed to give up his resident alien status in the United States to continue with the trip. In 2008 the family moved to Washington on an investment visa. They bought a house in Pierce County and worked in their own company.

By 2011 the parties considered themselves separated. In February, Maria and the children traveled to Australia for her father's birthday, but instead of returning to Washington at the end of the month as originally planned, Maria decided to stay until after her sister's wedding scheduled for that April. Jason became concerned that Maria was not planning to return the children to Washington.

## II. PROCEDURAL BACKGROUND

### A. Pretrial

Jason petitioned in Pierce County Superior Court for legal separation and for an ex parte restraining order for Maria's immediate return of the children to reside with him. After Maria opposed the restraining order, the court ordered a jurisdiction hearing under the Uniform Child Custody Jurisdiction and Enforcement Act.[4] Initially, Maria obtained counsel in Australia seeking Australian jurisdiction and residence. Shortly thereafter, however, Maria obtained Washington counsel, submitted to Washington's jurisdiction, and returned to Washington with the children. Although Maria submitted to Washington's jurisdiction, she maintained that it was in the children's best interest to grow up in Australia.

---

[4] Chapter 26.27 RCW.

2

The court appointed a guardian ad litem[5] (GAL) to evaluate the best interests of the children, who were then five and three. Based on Maria's and the GAL's preliminary suggestion, the court issued a temporary order, under which Jason and Maria rotated residential time with the children in the family home on a 50/50 basis.[6] A temporary order restrained the parties from disturbing each other's peace while they shared the house. Further, based on the GAL's recommendation, the court required that Jason's new live-in girlfriend not live in the house when Jason had the children.

During Maria's residential time with the children in the house, she noticed a cord coming out from under her refrigerator. Pulling the cord, she discovered a small speaker attached to a recording device, actively recording audio. After holding a show cause hearing for contempt for violating the temporary restraining order, the court imposed a monetary penalty of $500 against Jason for placing the device, but declined to award Maria attorney fees. Maria moved for revision of the denial of those attorney fees, but the trial court declined to revise. Because the parties were struggling with rotating in and out of the house, the trial court accelerated the trial date.

B.    Trial

At the bench trial, Jason stated that he had been the primary caregiver since the family's 2008 return to the United States and that Maria had been running the family's businesses. He stated that he wished to continue to be the primary caregiver and that he believed that Maria had a boyfriend in Australia.

---

[5] RCW 26.09.220.

[6] Specifically, the schedule set four nights with Jason and three nights with Maria one week, with the reverse the following week.

3

Maria told the court that she has been the primary caretaker and that she had implemented the GAL's suggestions, such as obtaining counseling. Maria submitted two proposed parenting plans: one with a residential schedule for the upcoming year, during which she intended to remain in the United States, and one for the year following, when she intended to relocate to Australia if the court allowed. Maria explained that she and Jason owned their businesses with another couple, which complicated the division.

The GAL recommended that Maria be the primary residential parent and that Jason have the children on the weekends and twice a week after school.[7] The GAL based that recommendation on her conclusions that: (1) PE was attached to both parents, (2) JE wanted to be with his mother and missed his grandparents, who live in Australia, (3) JE was more involved with his mother and her family, and (4) both parents were involved with the children, but the children's relationship with their mother was stronger.

The trial court asked the GAL whether she had talked to the man in Australia, whom Jason alleged Maria was having an affair with, to see whether the children should be around him. She replied that she was not able to contact the man. The trial court further questioned whether the GAL had "read this file," adding that it did not appear that she had done so. Verbatim Report of Proceedings (VRP) (Nov. 22, 2011) at 35-36. The trial court asked if based on "[h]er investigation, such as it was, did you come to any conclusion that either one of these parents was unfit and weren't good parents?" VRP (Nov. 22, 2011) at 39. The GAL replied that neither

---

[7] Specifically, the GAL recommended a two week schedule, where Jason would have the children Friday from 5:00 p.m. to Sunday at 5:00 p.m. the first week, and Saturday at 5:00 p.m. to Sunday at 5:00 p.m. the second week. Additionally, she recommended that Jason have the children after school on Tuesday and Thursday from 4:00 p.m. to 7:00 p.m., alternating one-on-one time with each child on Thursdays.

parent was unfit. The trial court then asked if she understood that the issue about boyfriends and girlfriends in the home applied both ways. The trial court noted that the GAL did not even talk to the people involved and stated, "[B]ottom line is that they're both caring and they both love these children." VRP (Nov. 22, 2011) at 39. The GAL affirmed that they did. Then the trial court asked the GAL if she had concerns about either of the parents caring for the children; she answered that the children would be well cared for in either environment.

At the close of evidence, to advise the parties of its thinking in preparation for closing arguments, the trial court stated:

> [T]hroughout this hearing I have been less than happy with both sides, of course, that pertains to credibility. . . . I've used the words manipulative, shrewd, calculating, and it is not fair to make that observation as to only one person.
> But it is also my judgment that this mother and father care a great deal about [PE] and [JE].
> . . . .
> There is no way in the world that anybody could put a parenting plan together better than the mother and the father if they think only of [JE] and [PE]. . . . And another parameter is that it would be 50/50 also, parenting, and the site it would seem to me they agreed upon some time ago was Pierce County, Washington. SeaTac is 20 minutes away. And daycare with their schedules and so on and schooling, including preschool, could be structured so there isn't an issue. Mom has to go to Dubai, mom has to go to Manila, dad has to go to China.
> So we work it out so that mom or dad, whatever the case is, looks after the little guys. And if it is not worked out, then you come back here. You don't go downstairs and argue, you come back here. And any problems that aren't worked out, I'll work out. And if I find in this Court's judgment that someone is being obstinate or obstructive, they will pay for the fees that are applicable.
> These two parents are capable, very capable in my observations, both personally and in their abilities to make a living.

VRP (Nov. 23, 2011) at 111-13.

In his closing argument, Jason stated that he had prepared proposed papers based on the court's statements. The trial court reiterated:

5

> I wasn't really happy, as I indicated. The biggest part of it was that credibility was an issue. And the only thing that was able to in my mind overcome that was the children, the parties, what appeared to be their love for their children. But they are pretty selfish people. Now, with that, go ahead, say what you want to say.

VRP (Nov. 28, 2011) at 3-4. Continuing, Jason stated that he would not review the testimony because the court was well aware of it and that he supported the court's parenting plan under which the children would remain in the North Tacoma area and evenly divide time with each parent.

In her closing argument, Maria outlined the evidence related to each of the applicable statutory factors. Based on the statutory criteria, Maria asked the court to adopt a shared schedule, but to make her the primary parent, alternating residential time with Jason on weekends and during each week. Additionally, her proposed plan provided that she and the children could return to Australia and that the children could attend school there.

The trial court ordered a 50/50 division in child custody.[8] At presentation, Maria argued that the findings of fact and conclusions of law should address the fact that the parties had lived in Australia for some time. The trial court refused, stating:

> They might have lived in Tokyo, do you want to put in there every place that they lived? The only relevant part is that they resided in Washington. I'll leave it the way it is.

VRP (Dec. 23, 2011) at 6-7. The final parenting plan designated both parents as the custodial parent and ordered that the children reside the majority of the time with each parent.[9] Maria

---

[8] The trial court also divided the parties' assets 50/50; this appeal concerns only the 50/50 residential placement.

[9] We take the trial court's order that the children reside the majority of time with each parent as ordering an even division of residential time.

6

timely appeals.

## ANALYSIS

Maria argues that the trial court erred because it (1) failed to consider the statutory factors and instead based its ruling on an erroneous two-factor standard, (2) refused to consider the children's life in Australia, (3) ignored the GAL's recommendations, and (4) failed to award her attorney fees connected to the contempt order. Jason responds that the trial court (1) properly made its decision based on all the statutory factors, (2) properly weighed the credibility of the GAL and Maria's evidence, and (3) appropriately refused attorney fees regarding an order unconnected to the parenting plan.

### I. STANDARD OF REVIEW

We review the trial court's decisions in the final parenting plan for an abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). The trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Mansour*, 126 Wn. App. 1, 8, 106 P.3d 768 (2004). A court's decision is based on untenable grounds or reasons if the record does not support its factual findings, if it has used an incorrect standard, or if the facts do not meet the requirements of the correct standard. *In re Marriage of Wicklund*, 84 Wn. App. 763, 770 n.1, 932 P.2d 652 (1996). In matters dealing with the welfare of children, the trial court has broad discretion. *Kovacs*, 121 Wn.2d at 801. "We are reluctant to disturb a child custody disposition because of the trial court's unique opportunity to personally observe the parties." *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981).

## II. STATUTORY FACTORS

Maria asks us to reverse and remand the parenting plan because the trial court failed to consider the statutory factors and instead used an erroneous two-factor standard. Jason responds that the trial court properly made its decision based on the factors. Maria is correct.

When ordering a parenting plan, the trial court must consider the criteria in RCW 26.09.187(3).[10] *In re Marriage of Littlefield*, 133 Wn.2d 39, 51-52, 940 P.2d 1362 (1997).

---

[10] RCW 26.09.187(3) provides:

    (a) The court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. The child's residential schedule shall be consistent with RCW 26.09.191. Where the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule, the court shall consider the following factors:

    (i) The relative strength, nature, and stability of the child's relationship with each parent;

    (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

    (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

    (iv) The emotional needs and developmental level of the child;

    (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

    (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

    (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

    Factor (i) shall be given the greatest weight.

    (b) Where the limitations of RCW 26.09.191 are not dispositive, the court may order that a child frequently alternate his or her residence between the households of the parents for brief and substantially equal intervals of time if such provision is in the best interests of the child. In determining whether such an arrangement is in the best interests of the child, the court may consider the

8

When written findings of fact do not clearly reflect a consideration of the statutory factors, we may review the trial court's oral opinion. *Murray*, 28 Wn. App at 189.[11] Specific findings are not required on each statutory criterion when (1) evidence of those criteria is before the court and (2) its oral opinion and written findings reflect consideration of them. *Murray*, 28 Wn. App. at 189.

Here, Maria, Jason, and their respective witnesses testified regarding the statutory factors. Maria and Jason gave conflicting testimony about who had been the primary caregiver and who had the stronger relationship with the children. RCW 26.09.187(3)(a)(i), (iii). No one testified, though, that either party was an unfit parent. As Maria notes, she outlined each of the statutory factors in her closing argument. The trial court had evidence on each of the statutory factors before it. *See In re Marriage of Croley*, 91 Wn.2d 288, 291, 588 P.2d 738 (1978).

Although evidence of each criterion was before the court, the trial court's oral opinion and written findings do not reflect consideration of them. *Murray*, 28 Wn. App. at 189. The heart of the trial court's rationale lies in its statement: "The biggest part of it was that credibility was an issue. And the only thing that was able to in my mind overcome that was the children, the parties, what appeared to be their love for their children." VRP (Nov. 28, 2011) at 3-4. The

---

parties['] geographic proximity to the extent necessary to ensure the ability to share performance of the parenting functions.

(c) For any child, residential provisions may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of residential time by a parent, including but not limited to requirements of reasonable notice when residential time will not occur.

(Reviser's note omitted.)

[11] *Littlefield* and *Murray* addressed the parenting plan statute in former RCW 26.09.190 (1973). The legislature replaced this provision with RCW 26.09.187 in 1987. LAWS OF 1987, ch. 460, § 61.

court's expression, "love for their children," generally conveys "[t]he relative strength, nature, and stability of the child's relationship with each parent," which is one of the statutory criteria of RCW 26.09.187(3). 4 VRP at 3-4. "Credibility," on the other hand, is not one of the statutory criteria, but rather is weighed when applying the factors.

The "relative strength, nature, and stability of the child's relationship with each parent" is the sole statutory criterion which the court's decision or findings show that it considered. VRP (Nov. 28, 2011) at 33; Clerk's Papers at 263-64. RCW 26.09.187(3) requires that the court consider all of the listed criteria. As discussed further below regarding Australia, it is particularly significant that the trial court did not discuss RCW 26.09.187(3)(v), which requires consideration of:

> The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities.

The failure to consider all the statutory criteria was inconsistent with the statute. In addition, without an examination of this and other statutory factors, it is impossible to determine on what basis the court ultimately made its determination. *In re Marriage of Combs*, 105 Wn. App. 168, 176-77, 19 P.3d 469 (2001). Therefore, the court's failure to examine the required statutory factors was an abuse of discretion. *Combs*, 105 Wn. App. at 177.

### III. AUSTRALIA

The evidence showed that the children have important ties to Australia. Maria and the children are Australian citizens; as such, they receive significant benefits in Australia, including free medical care. In contrast, the family does not have health insurance in the United States because they are self-employed. Additionally, in Australia Maria and the children receive a bi-

weekly tax benefit payment, and Maria receives a 63 percent child care expense rebate. In addition to significant economic benefits, the children have extended family in Australia, including maternal grandparents, an uncle, great aunts and great uncles, and many cousins. Jason acknowledges that Maria's family has been close and supportive. Finally, Jason is a Canadian citizen and Maria presented evidence that his temporary United States visa, which is the basis for his residency, is problematic.

The trial court did not make findings about these connections and did not discuss them in its ruling. As noted, the trial court refused to consider them, stating:

> They might have lived in Tokyo, do you want to put in there every place that they lived? The only relevant part is that they resided in Washington. I'll leave it the way it is.

VRP (Dec. 23, 2011) at 6-7.

Jason's position that the trial court properly ignored the ties to Australia because Maria "kidnapped" them is not supported by the evidence. Br. of Resp't at 21-22. Jason testified that he was fully aware of Maria's planned trip with the children and that he later became concerned because their marriage had disintegrated and Maria extended her absence. Although Maria initially contested jurisdiction, shortly thereafter she returned to Washington with the children.

The court's refusal to consider ties to Australia is a refusal to consider the factor of RCW 26.09.187(3)(v):

> The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities.

For the reasons in Part II of the Analysis above, the failure to consider this factor violates RCW 26.09.187(3) and constitutes an abuse of discretion.

11

## IV. GUARDIAN AD LITEM

Maria further argues that the trial court improperly ignored the GAL's recommendation that Maria be the primary residential parent. We disagree. "The [trial] court is . . . free to ignore the guardian ad litem's recommendations if they are not supported by other evidence or it finds other testimony more convincing." *Fernando v. Nieswandt*, 87 Wn. App. 103, 107, 940 P.2d 1380 (1997). Here, the GAL recommended that Maria be the primary residential parent, but she also affirmed that she did not have concerns about either parent and stated that the children would be well cared for by both parents.[12] We conclude that the trial court did not abuse its discretion by not implementing the GAL's specific recommendations.

## V. ATTORNEY FEES FOR CONTEMPT

Maria argues that the trial court erred by failing to award her reasonable expenses for bringing her successful contempt motion. Jason responds that the trial court did not err because the contempt ruling "had nothing to do with the parenting plan." Br. of Resp't at 23. Again, we agree with Maria.

Before trial, the court issued a temporary order under which Jason and Maria rotated living with the children in the family house. Based on Jason's concerns about both parties sharing the house, the temporary order restrained the parties from disturbing the other party's peace. After Jason hid a recording device behind the refrigerator during Maria's residential time with the children, the trial court found Jason in contempt for violating this aspect of the

---

[12] Additionally, the trial court was concerned that the GAL had not fully investigated Maria's alleged boy friend in Australia. Thus, the trial court may have reasonably determined that the GAL's recommendation lacked evidential support. *Fernando*, 87 Wn. App. at 107.

12

temporary order and imposed a $500 penalty under chapter 26.50 RCW. The trial court, however, did not award the attorney fees associated with obtaining the contempt order.

RCW 26.09.160(2)(b) states that if a parent is found in contempt of court for violating an order establishing residential provisions for a child, "the court shall order . . . (ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance." Under this statute, Maria is entitled to reasonable attorney fees for obtaining the contempt order against Jason.

## VI. APPELLATE ATTORNEY FEES

Both Maria and Jason request attorney fees under RAP 18.1. We may award fees as part of the cost of litigation allowed by contract, statute, or equitable principles. *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009). RCW 26.09.140 authorizes an award of reasonable costs and attorney fees on appeal after considering the parties' financial resources and the arguable merit of the issues raised on appeal. *In re Marriage of Johnson*, 107 Wn. App. 500, 505, 27 P.3d 654 (2001). In this case, the trial court concluded the parties would pay their attorney fees 50/50 from their community assets. Although Maria prevails in this appeal, she does not contend that her financial circumstances have changed since that time, nor did she file a financial declaration no later than 10 days before oral argument. *Johnson*, 107 Wn. App. at 505; RAP 18.1(c). Where a trial court orders the parties to bear their own fees, we do not award appellate fees unless the party demonstrates a change in financial circumstances. *See Combs*, 105 Wn. App. at 177.

We reverse and remand for a new trial consistent with this opinion. We also grant Maria reasonable attorney fees associated with the contempt motion.

No. 42990-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered there is no need to publish.

BJØRGEN, J.

We concur:

HUNT, P.J.

PENOYAR, J.