# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In Re the Marriage of:<br><br>ADAM J. IMPALA,<br><br>    Respondent,<br><br>vs.<br><br>JULIE R. IMPALA,<br><br>    Appellant. | No. 52476-7-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Julie Impala appeals the trial court's order establishing a permanent parenting plan and denying her motion for reconsideration. Based on evidence establishing Julie's extensive history of drug and alcohol abuse, relapses, and inconsistent family support, the trial court determined that once her son begins kindergarten, it will be in his best interest to reside primarily with his father, Adam Impala, for stability and consistency.

Julie[1] argues that (1) the trial court erred by imposing a permanent residential schedule whereby their son will reside with both parents equally until he begins kindergarten, at which time he will reside with Adam primarily, or, in the alternative, the trial court erred by not reserving determination of this issue until after their son begins kindergarten; and (2) the trial court erred by denying Julie's motion for reconsideration. Adam argues that (1) the trial court did not err by

---

[1] We use the parties' first names for clarity, and no disrespect is intended. Also, Julie's last name is now Shelton.

imposing the residential schedule as it did because the court has broad discretion and reserving determination of the issue would have delayed finality; and (2) the trial court did not err by denying Julie's motion for reconsideration. Adam also argues that (3) Julie's appeal is frivolous, and thus, he is entitled to reasonable appellate attorney fees and costs under RAP 18.1.

We hold that (1) the trial court did not abuse its discretion by entering a permanent residential schedule that changes once their son begins kindergarten because the residential schedule is in his best interest and reserving determination of the issue would have delayed finality; (2) the trial court did not err by denying Julie's motion for reconsideration because she presented no new arguments; and (3) because this appeal is frivolous, Adam is entitled to an award of reasonable appellate attorney fees and costs.

FACTS

Julie and Adam Impala were married on July 24, 2015, and they have one son. The parties separated on December 4, 2016, and Adam filed for a restraining order and dissolution of marriage on June 5, 2017. The trial court entered a temporary parenting plan on July 6, which established that their son was to live with Adam for 30 days and Julie was to have supervised visitation. The court entered a second temporary plan 30 days later, which changed the residential schedule to a 50-50[2] residential schedule.

Julie has a history of addiction to alcohol, benzodiazepines, and opioids. She has been to Schick Shadel Hospital[3] multiple times for her addictions. Julie's last treatment began June 1,

---

[2] The parties refer to the 50-50 residential schedule as the "2-2-5-5" schedule in the record below.

[3] Schick Shadel Hospital is a drug and alcohol treatment center.

2017, one year before trial. During their relationship, Julie never informed Adam that she had previously participated in rehabilitation treatment. Julie did not drink alcohol while she was pregnant with their son, but she did take pain medication. In March 2017, Julie did not disclose to her doctor that she had been in treatment twice before for addiction to opioids when he was prescribing her pain medication. At trial, Julie's mother testified that she has brought alcohol to Julie's house and has had drinks with her because Julie told her "that she felt this was the way she could" get off the pain medications. Verbatim Report of Proceedings (VRP) (June 25, 2018) at 243. Julie successfully completed treatment for the third time at Schick Shadel in June 2017, and there is no evidence in the record that she has relapsed since completing her treatment. Julie works one day per week as a hairstylist at Vakkar Salon.

Adam works for Boeing, and he lives in a house he owns in Lakewood. He works the second shift Monday through Friday from 2:00 p.m. to 10:30 p.m., and his mother assists him with childcare while he is at work. Adam plans to move to a different shift once their son begins kindergarten, which will allow him to be home from work once their son is home from school. VRP (June 26, 2018) at 299-300.

At trial, the court heard testimony from both parties, both parties' mothers, Julie's friend, and a physician from Schick Shadel who treated Julie. Following the trial, the court sent its decision letter to the parties explaining its rulings and reasoning. The court explained that it had considered each of the statutory factors in RCW 26.09.187(3)(a)(i)-(vii)[4] and explained its reasoning and the evidence supporting each factor. Based on Julie's long-term issue with drugs

---

[4] RCW 26.09.187(3), "Identifies the criteria for establishing residential provisions for a permanent parenting plan." Clerk's Papers at 104.

and alcohol, the court found that Julie had a limitation under RCW 26.09.191(3)(c)[5], but it did not apply this limitation factor to reduce Julie's residential time with their son or her ability to make decisions related to him. Regarding the residential schedule, the court's decision stated that "[t]he residential schedule shall continue on the [50-50] schedule until [the child] begins school. When this occurs, [the child] will spend every other weekend with his mother and may spend one evening per week with his mother."

The trial court then held a presentation hearing on August 3, 2018, where Julie requested modifications to the parenting plan. Specifically, Julie suggested the court reserve entering a permanent parenting plan until after their son, who was two years old at the time of trial, begins kindergarten because Julie may move into his school district. This was the first time Julie mentioned any intention of moving from Eatonville. The trial court considered reserving its decision, but ultimately determined that their son's best interests would be served by entering a permanent parenting plan that provided stability and consistency.

The trial court entered a permanent parenting plan which included a limiting factor–Julie's substance abuse issues–named Adam as the primary custodian, and established a residential schedule whereby their son will reside equally with Julie and Adam until he begins kindergarten, at which time he will reside primarily with Adam. Julie moved for reconsideration of the final parenting plan under CR 59 and Pierce County Local Rule 7(c)(1)-(3), arguing that the change in the residential schedule once their son begins kindergarten is not in his best interest, the court

---

[5] RCW 26.09.191–Restrictions in temporary or permanent parenting plans.

should have reserved determination of the issue until their son begins kindergarten, and both parents should be co-custodians of their son. The trial court denied this motion.

Julie appeals (1) the trial court's decision to implement the 50-50 permanent residential schedule until their son begins kindergarten, at which time their son will live primarily with Adam, or, alternatively, the trial court's decision not to reserve determination of this issue until their son begins kindergarten; and (2) the trial court's denial of her motion for reconsideration.

## ANALYSIS

Julie argues that the trial court erred by imposing a permanent residential schedule providing that their son will reside with both parents on a 50-50 schedule until he begins kindergarten, at which time he will reside primarily with Adam. She argues that, alternatively, the trial court erred by not reserving determination of this issue until after their son begins kindergarten. Finally, Julie argues that the trial court erred by denying her motion for reconsideration. Adam argues that the trial court did not err by imposing a permanent residential schedule because it was within the court's broad discretion and reserving determination of the issue would not have promoted finality. He also argues that Julie's appeal is frivolous, and thus, he is entitled to an award of reasonable attorney fees and costs under RAP 18.1.

We hold that the trial court did not err by (1) entering a permanent parenting plan with a 50-50 residential schedule until their son begins kindergarten, at which time he will reside primarily with Adam, and declining to reserve determination of this issue; and (2) denying Julie's motion for reconsideration. We also hold that Julie's appeal is frivolous and award Adam reasonable appellate attorney fees and costs.

I. RESIDENTIAL SCHEDULE

We review a trial court's rulings dealing with the provisions of a residential schedule for an abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Littlefield*, 133 Wn.2d at 46-47. A court's decision is manifestly unreasonable if it is outside the range of acceptable choices. *Littlefield*, 133 Wn.2d at 47. If its decision is unsupported by the record, it is based on untenable grounds; and if it is based on an incorrect standard or the "facts do not meet the requirements of the correct standard," its decision is based on untenable reasons. *Littlefield*, 133 Wn.2d at 47. The trial court's findings "are given great weight on review because it is in a unique position to observe the parties and their demeanor." *Fernando v. Nieswandt*, 87 Wn. App. 103, 108, 940 P.2d 1380 (1997). We "will not disturb the trial court's findings so long as they are supported by 'ample evidence.'" *Fernando*, 87 Wn. App. at 108 (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds*).

A trial court has broad discretion when making residential placements. *Littlefield*, 133 Wn.2d at 51. RCW 26.09.002 establishes the policy for courts to follow when making determinations affecting a child: "the best interests of the child." The statute goes on to say that the best interests of the child are "served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." RCW 26.09.002. A residential placement should only be altered by the changed relationship of the parents or when it would be in the child's best interests to do so. RCW 26.09.002.

Even with this policy in mind, trial courts have broad discretion and flexibility to "assess each case based on the merits of the individual cases before them," and to tailor "to the needs of the individuals involved in a particular dissolution." RCW 26.09.003; *In re Marriage of Chandola*, 180 Wn.2d 632, 658, 327 P.3d 644 (2014). "This discretion promotes finality, preventing 'extended litigation [that] can be harmful to children.'" *Chandola*, 180 Wn.2d at 658 (alteration in original) (quoting *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003)).

RCW 26.09.187(3)(a) provides the residential provisions a court shall consider when establishing a permanent parenting plan:

(a) The court shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances. . . . [T]he court shall consider the following factors:

(i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions . . . including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

Factor (i) shall be given the greatest weight.

The trial court must use these factors in determining how to fashion its parenting plan "as they exist at the time of trial." *Littlefield*, 133 Wn.2d at 56.

A. CHANGE IN RESIDENTIAL SCHEDULE[6]

Julie argues that the change in the residential schedule once their son begins kindergarten may cause harm, citing *In re Parentage of Schroeder*, 106 Wn. App. 343, 22 P.3d 1280 (2001). Julie argues that based on the change in the residential schedule once their son begins kindergarten, he "might weather this change without any issue whatsoever," or he "also may need to be treated by one or more health care professional[s] dependent on the condition(s) that he might develop as a result of the schedule change." Br. of Appellant at 14. There is nothing in the record to support this, and we will not rely on mere conjecture. "While the court 'need not wait for actual harm to accrue before imposing restrictions,' it may impose restrictions only where substantial evidence shows 'that a danger of . . . *damage* exists.'" *Chandola*, 180 Wn.2d at 645 (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 36, 283 P.3d 546 (2012)). Further, *Schroeder* does not apply as that case addresses modification, which is not at issue here.

Here, the trial court carefully considered each of the statutory factors in RCW 26.09.187(3)(a)(i)-(vii). The court did so after the three-day trial, where it heard testimony from both parties, both parties' mothers, Julie's friend, and a physician from Schick Shadel who treated Julie. The parties presented testimony regarding Julie's history of drug and alcohol addiction, both parties' work schedules and their abilities to care for their son, their family support, the parties'

---

[6] Julie challenges only findings 8 and 9, related to the parenting time schedule of the parenting plan. All other findings are verities on appeal. *In re Marriage of Rounds*, 4 Wn. App. 2d 801, 804, 423 P.3d 895 (2018) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992)).

histories of caring for their son, and the parties' employment and living conditions related to each of their abilities to provide stability for their son. In its written decision, the trial court detailed its reasoning for entering the residential schedule as it did. The trial court found a limiting factor for Julie under RCW 26.09.191(3)(c) regarding her history with substance abuse. Based on this limitation, the judge could have, but did not, limit Julie's residential time.

The trial court's findings of fact are supported by "ample evidence." *Fernando*, 87 Wn. App. at 108 (quoting *Schneider*, 82 Wn. App. at 476). Julie has an extensive history of drug and alcohol addiction, and the trial court found that Julie has "not yet fully confronted the nature and extent of her addictions." Clerk's Papers (CP) at 50. Julie's mother testified that she has brought alcohol to Julie's house and has had drinks with her because Julie told her "that she felt this was the way she could" get off the pain medications. VRP (June 25, 2018) at 243.

As explained in its decision letter to the parties and as ordered in the permanent residential schedule, the trial court reviewed and discussed each of the statutory factors under RCW 26.09.187(3)(a)(i)-(vii). As to subsection (i), the relative strength, nature, and stability of the child's relationship with each parent, the court found that their son has a strong and healthy relationship with both of his parents, and that although Julie has historically been the primary caretaker in terms of performing parenting duties, Adam performs those duties, as well. As to subsection (ii), whether the parties had an agreement, the court found that the parties had no agreement. As to subsection (iii), each parent's past and potential for future performance of parenting functions, the court found that both parents were capable of performing parenting functions, and that they are both excellent parents, so long as Julie maintains her sobriety.

However, the court expressed concern at Julie's ability to parent to the extent that she is at risk of relapse.

As to subsection (iv), the emotional needs and development level of the child, the court found that their son's emotional needs and developmental level were appropriate for a child his age. As to subsection (v), the child's relationship with sibling and with other significant adults, the court found that although their son has no siblings, he enjoys strong and healthy relationships with the adults in his life.

As to subsection (vi), the wishes of the parents and the wishes of the child, the court found that the parties' wishes "diametrically opposed," and it found that their son is not yet mature enough to express his preferences. CP at 107. As to subsection (vii), each parent's employment schedule, the court found that Julie's employment is flexible, allowing her parenting schedule to be as flexible as needed. It found that Adam's schedule was quite busy and he works substantial hours of overtime, but that he can shift his schedule in the future to accommodate their son's needs. The court discussed Julie's arguments that Adam's mother frequently takes care of their son while Adam is at work, and "that [their son's] best interests are better served by continuing to spend the same amount of actual time with his father, and the balance of the time with his mother." CP at 107. The trial court found that because their son would be starting school full time in the future, his time with his parents would be reduced anyway.

The trial court imposed a requirement that Julie abstain from alcohol or non-prescribed drugs, and that she be transparent about her addictions with medical professionals. This requirement also provides that Adam may request urinary analyses from Julie, and Julie is required

10

to provide quarterly hair follicle tests. The trial court decided that the residential schedule will remain 50-50 until their son begins kindergarten, at which time he will live primarily with Adam.

The record reflects that the decision of the trial court was based on a consideration of each statutory factor listed in RCW 26.09.187(3)(a)(i)-(vii) and was based on the evidence presented. Based on the record, we conclude that the trial court's decision was not based on untenable grounds or reasons and it was not manifestly unreasonable, and the trial court did not abuse its discretion by establishing the permanent residential schedule as it did.

B.  RESERVATION OF FINAL DETERMINATION

A trial court may reserve determination of a final decision. *In re Marriage of Possinger*, 105 Wn. App. 326, 334-36, 19 P.3d 1109 (2001). "[T]he best interests of the child standard remains the paramount policy underlying the [Parenting] Act [of 1987]." *Possinger*, 105 Wn. App. at 336. However, the trial court's ability to reserve determination of a permanent residential schedule has been used "sparingly, and rightfully so—for there is a strong presumption favoring finality of parenting plans and residential continuity in a child's life." *Possinger*, 105 Wn. App. at 337. "[I]n the ordinary case, the sooner that a decree ensuring finality of the parenting plan and residential continuity can be entered, the better it is likely to be for the children of divorcing parents." *Possinger*, 105 Wn. App. at 337.

Julie did not advise the trial court she had any intention of moving into their son's school district until the presentation hearing. The trial court considered the idea of reservation as a possibility, but ultimately it determined that other factors aside from geography established that their son's best interests would be served by having a permanent residential schedule that provided stability and consistency.

Because their son's best interests were served by having the trial court finalize the residential schedule, and this case did not present a rare circumstance where reservation of a final determination was warranted, we hold that the trial court did not err by declining to reserve the final determination of the residential schedule until their son begins kindergarten.

## II. MOTION FOR RECONSIDERATION

Julie argues that the trial court erred by denying her motion for reconsideration. We hold that the trial court did not err by denying Julie's motion for reconsideration.

CR 59 provides reasons that a party may move for reconsideration of a verdict. Pierce County Local Rule 7(c)(1)-(3) provides the procedure for a party to bring the motion.

The motion for reconsideration was heard by the same trial court judge who presided over the trial. Because Julie presented no new arguments in her motion, we hold that the trial court did not err by denying Julie's motion for reconsideration.

## ATTORNEY FEES AND COSTS

Adam requests that we find that Julie's appeal is frivolous and award him reasonable appellate attorney fees and costs under RAP 18.1.

RAP 18.1 authorizes a party to recover reasonable attorney fees and costs so long as the party "request[s] the fees or expenses." RAP 18.1(a). The party must do so in a separate section of his or her opening brief. RAP 18.1(b). This court may, on its own initiative or on motion of a party, order a party who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). An appeal is frivolous where "it presents

no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004). We consider the record as a whole in determining whether an appeal is frivolous. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 110, 74 P.3d 692 (2003). The fact that an appeal is ultimately unsuccessful is not dispositive of whether it is frivolous, and we resolve doubts in favor of the appellant. *Tomsovic*, 118 Wn. App. at 110.

This appeal is entirely devoid of merit because, as Julie states in her own briefing, "the trial court has broad discretion" in establishing a permanent residential schedule. Br. of Appellant at 7. Further, we hold that the trial court did not abuse its discretion in ordering the permanent residential schedule, and thus, we hold that the appeal is frivolous and award Adam reasonable appellate attorney fees and costs. *Yurtis*, 143 Wn. App. at 696; *Carrillo*, 122 Wn. App. at 619.

CONCLUSION

We affirm the trial court's order establishing a permanent parenting plan and hold that this appeal is frivolous, and thus, we award Adam reasonable appellate attorney fees and costs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040.

SUTTON, J.

We concur:

WORSWICK, P.J.

CRUSER, J.

14