# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parentage of: | ) | NO. 73791-1-I |
| | ) | |
| K.B.M., | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| KEVIN L. WHITSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| SUZANNE R. MARSH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 7, 2016 |
| | ) | |

2016 MAR -7 AM 9: 46
COURT OF APPEALS
STATE OF WASHINGTON
FILED

LAU, J. — This case involves a disputed parenting plan modification between Suzanne Marsh and Kevin Whitson involving their only child, nine-year-old K.B.M.[1] Marsh petitioned for major and minor plan modifications under RCW 26.09.260 and restrictions on visitation under RCW 26.09.191. She alleged grounds for modification and restrictions based on Whitson's sexual mistreatment, abusive use of conflict, and

---

[1] Marsh and Whitson never married.

other issues involving K.B.M. Following a five-day trial, the court entered written findings and ordered minor parenting plan modifications. Marsh challenges the modified parenting plan as not supported by adequate factual findings and the trial court's failure to resolve material disputed issues. We conclude the trial court's findings are insufficient to permit review of the parenting plan. Accordingly, we remand for entry of adequate findings for review on the existing record.

FACTS[2]

In April 2010, the court entered a parenting plan following a one-day trial. The parenting plan allowed Whitson alternate weekends with K.B.M. and some vacation time during school breaks and summer on a gradually increasing basis. The parenting plan also allowed joint decision-making. The court required exchanges to take place in Kelso, Washington, requiring both parties to drive four hours. Marsh remained the primary residential parent.

In 2014, Marsh petitioned under the parenting plan modification statute, RCW 26.09.260, to modify the parenting plan. Marsh alleged Whitson exposed K.B.M. to pornography, K.B.M. made sexualized remarks, experienced bowel control problems ("encopresis") after visits with Whitson, and commented about women such as "girls like to sit on pokey things." Clerk's Papers (CP) at 21, 26. Marsh complained about the travel required for residential transfers and the conflict it caused. Marsh also claimed the present parenting plan created conflicts with Whitson.

---

[2] We address only the adequacy of the trial court's findings of fact in this opinion, not the merits of any disputed issues.

Marsh's petition sought to modify the parenting plan by reducing Whitson's visitation time and requiring supervision by the grandparents. She also requested sole decision-making, restraints prohibiting derogatory and litigation comments, counseling for K.B.M., access to K.B.M.'s medical records, and appointment of a guardian ad litem for five years.

On May 2, 2014, a King County Superior Court commissioner found adequate cause to justify a trial, ruling, "the substantial change of circumstances is related to the child's bowel habits and the court is unable to determine the reason for these problems." CP at 69. "The court has concerns regarding the effect the high conflict environment is having on the child. The court also considered in its Adequate Cause Finding the substantial change in both parties' work schedules and the father's medical condition." CP at 69.

On September 18, 2014, the court ruled that it is in the best interest of K.B.M. to appoint Dr. Christen Carson, a certified parenting evaluator, to investigate and assess all issues related to Marsh's petition. The court ordered the evaluator to investigate "all issues relating to the development of a parenting plan," including the mother and father's mental health issues and the father and K.B.M.'s physical health issues. CP at 584. Related to the investigation's scope, the court's order noted the mother's allegation of K.B.M.'s "encopresis issues" "related to . . . the father." CP at 585. The court also noted the parents' reciprocal complaints of abusive use of conflict, causing detriment to K.B.M.'s physical and mental wellbeing.

In February 2015, child and family therapist Jamie Bliss diagnosed K.B.M. with depression and prescribed medication. K.B.M.'s treating nurse practitioner, Megan Lindale, expressed concern he might be suicidal and struggled from encopresis.

On February 26, Dr. Carson submitted a 59-page report detailing her investigation. Her report was based in part on observational interviews of K.B.M. with Marsh, Whitson, and Whitson's parents; interviews with K.B.M.'s teachers, counselors, and medical providers; psychological testing; and other records.

Dr. Carson concluded that "[t]he allegation that Mr. Whitson emotionally mistreats [Marsh] is supported." CP at 333. She found "[t]he allegation that Mr. Whitson refuses to co-parent with [Marsh] is supported." CP at 333. She found support for the claim "that Mr. Whitson has a long-term emotional impairment that affects his ability to parent and co-parent . . ." CP at 335. She found "[t]he allegation that Mr. Whitson creates or uses conflict in a way that creates distress is supported." CP at 336. She found "[t]he allegation that Mr. Whitson sexually mistreats or harms their son has significant support and should be reviewed by the court as a potential limiting factor." CP at 339. She found no support for Whitson's allegations against Marsh. She found attachment and an emotional bond between K.B.M. and Whitson.

She recommended Whitson's visits be supervised subject to compliance with treatment recommendations, sole decision-making authority by Marsh, and to continue K.B.M.'s counseling. Dr. Carson also recommended the appointment of a guardian ad litem for five years. She concluded that, "[e]nactment of the current parenting plan is posing severe risk to the child and requires major modification." CP at 349.

At the five-day bench trial, Marsh, Whitson, Whitson's parents Linda and Hugh, Bliss, and Dr. Carson testified.

On June 19, several days after the trial concluded, the court entered a final parenting plan, which encompassed only minor changes to the residential schedule, changed transportation arrangements, made Marsh the sole decision-maker, and imposed some conditions on Whitson. The court declined to impose restrictions sought by Marsh, indicating in the final parenting plan, "[d]oes not apply" because there are no limiting factors. CP at 278.

On July 13, the court entered its final order on the parenting plan modification. Under section 2.7, entitled "Substantial Change in Circumstances" the trial court entered four findings: (1) Marsh had a second job requiring changes to transportation arrangements, (2) two seasons of sports would be beneficial to K.B.M., (3) the parties agreed Marsh should have major decision-making authority on non-emergency medical decisions and education, and (4) arbitration to resolve disputes.[3]

On the same day, the trial court declined "to reconsider the entire plan" but clarified and reconsidered portions of the modified parenting plan.[4] CP at 297. The court entered no findings to support any of these changes. For example, the court changed the father's pick up time from 8:30 pm to 6:00 pm. The court changed the mid-winter and spring break schedule. The court changed the scheduling of sports activities during school breaks and summers.[5]

---

[3] The parties stipulated at trial that Marsh should have decision-making authority.
[4] Marsh's motion to reconsider is not included in the record.
[5] We note that the changes to the final parenting plan in the order on clarification/reconsideration are not expressly incorporated into the final parenting plan.

Marsh appealed and moved for a stay of the modified plan. A commissioner of this court denied the stay but accelerated review.

ANALYSIS

Marsh challenges the trial court's inadequate findings of fact and failure to resolve the central issue alleged in her modification petition and disputed at trial. Without adequate findings, Marsh claims this court is unable to determine whether (1) the court properly evaluated the statutory factors in the parenting plan modification statute, RCW 26.09.260, and the parenting plan restrictions statute, RCW 26.09.191, and (2) whether the trial court complied with its paramount duty to protect the child. Indeed, the trial court is charged with the overarching obligation to ensure the best interests of the child in such matters.

Marsh petitioned for modification pursuant to RCW 26.09.260(1), (2), (4), (5), and (10). That statute sets forth criteria and procedures for modifying an existing parenting plan. These criteria and procedures limit the court's range of discretion. In re the Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). The court relied on sections (5) and (10) for its modifications.

Under RCW 26.09.260(1), a court may order modification to a parenting plan where it finds, "that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interest of the child." These findings must be based on

---

Neither the court or the parties attempted to amend the parenting plan to include these changes.

facts that "have arisen since the prior decree or plan or that were unknown to the court at the time the prior decree or plan" was implemented.

Section (2) requires the court to maintain the existing residential schedule unless it finds "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."

Section (4) authorizes the court to impose restrictions where certain statutory criteria are met under RCW 26.09.191, discussed below.

Section (5) allows for minor modifications to the residential aspects of a parenting plan in certain circumstances:

> (5) The court may order adjustments to the residential aspects of a parenting plan upon a showing of a substantial change in circumstances of either parent or of the child, and without consideration of the factors set forth in subsection (2) of this section, if the proposed modification is only a minor modification in the residential schedule that does not change the residence the child is scheduled to reside in the majority of the time and:
>
> (a) Does not exceed twenty-four full days in a calendar year.

Under section (10), the court may order adjustments to any nonresidential aspects of the parenting plan upon a showing of a substantial change in circumstances and that the adjustment is in the best interest of the child. The court relied on this section to modify the dispute resolution, decision-making, and transportation provisions of the parenting plan.

Generally, "the court may not impose limitations or restrictions in a parenting plan in the absence of express findings under RCW 26.09.191." Katare v. Katare, 125 Wn. App. 813, 826, 105 P.3d 44 (2004). Furthermore, "any limitations or restrictions imposed must be reasonably calculated to address the identified harm." Katare, 125

Wn. App. at 826. RCW 26.09.191 confers authority on the court to limit provisions in the parenting plan where certain conditions are met. Marsh petitioned for restrictions under this statute generally. Dr. Carson endorsed restrictions under RCW 26.09.191(2)(b) and (3)(b).

RCW 26.09.191(2)(b) states the court "shall" limit a parent's residential time if it finds the parent, among other things, engaged in various types of abuse. Section (2)(m)(i) requires limitations be reasonably calculated to protect the child and provide for its safety.

Section (3) allows the court to limit any provision of a parenting plan where it finds a parent's "involvement or conduct may have an adverse effect on the child's best interest" and any of the factors listed in that section are present, including "[a] long-term emotional or physical impairment which interferes with the parent's performance of parenting functions," or "other factors or conduct as the court expressly finds adverse to the best interest of the child." RCW 26.09.191(3)(b), (3)(g).

A trial court must make findings of fact and conclusions of law sufficient to suggest the factual basis for the ultimate conclusions. CR 52(a); Lawrence v. Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001). The court need not make findings of fact on all matters about which there is evidence in the record, but only those which establish the existence or nonexistence of determinative factual matters. In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). The purpose of the requirement of findings and conclusions is to confirm the trial judge has dealt fully and properly with all the issues in the case before reaching a decision and so that the parties involved and the appellate court are fully informed as to the bases of the

-8-

decision. LaBelle, 107 Wn.2d at 218-19. In some circumstances, however, "[i]nadequate written findings may be supplemented by the trial court's oral decision or statements in the record." Lawrence, 105 Wn. App. at 686.

Because the trial court has the unique opportunity to observe the parties, appellate courts are reluctant to disturb child placement dispositions. In re Parentage of Schroeder, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001). Accordingly, "[a] trial court's parenting plan is reviewed for an abuse of discretion, which occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (internal quotation omitted). Appellate courts do not retry facts on appeal and will accept findings of fact as verities where they are supported by substantial evidence. In re Marriage of Thomas, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991).

Here, we are presented with the question of whether the trial court's oral comments and written findings adequately support the parenting plan modifications and resolve the material disputed issues. After the close of evidence, the court encouraged the parties to agree on a modified parenting plan. The court hinted at where it was "headed" and described K.B.M.'s situation:

> I think it's abundantly apparent here to everybody that [K.B.M.] is in extreme distress about the situation. It sounds like he's telling different things to different people. And it's a perfect illustration of the stress he's under that when he's with Mom and in King County, he's [B]; when he's with the Whitsons, he's [K]. I mean, this kid has two separate identities.
> . . . .
> I think that sports are something that [K.B.M.] really needs right now. It's stability. It's a schedule. And he feels like—you know, obviously he's told people he doesn't think he's got control over his life. . . . You've got to figure out ways in which you can give the child some control over decision-making that's developmentally appropriate.

RP (June 16, 2015) at 890-91.

The court explained that Whitson's biggest parenting challenge was dealing with his Asperger's and "understanding why the other person does the things they do." RP (June 16, 2015) at 893. The court told Whitson he needed to read books and attend classes on parenting, stating, "you need to understand how to modify your behavior so that you don't come across as demanding. . ." RP (June 16, 2015) at 894.

Informal settlement discussions failed. During closing arguments, the court commented further about the case. Marsh argued that Whitson lacked the insight to care for a child and that K.B.M.'s visits with Whitson coincided with his distress. The court responded that K.B.M.'s therapist thought the distress was "more related to the driving." RP (June 16, 2015) at 900.

When Marsh asserted that trips to Whitson's home would interfere with counseling sessions, the court stated that K.B.M. "wants to connect with the Whitsons. And when I say 'the Whitsons,' I'm saying his father—the father and the grandparents. I think, to him, it's a package deal." RP (June 16, 2015) at 904.

The court commented on K.B.M.'s need for stability:

> I think the parenting evaluator got that right in the sense of needing stability for the first few months. And she called it a "cooling-off period." I don't know if that's what I'd call it, but I think something like that low-key needs to happen; and, two, the sports are really important to this kid, at least right now.

RP (June 16, 2015) at 905.

The court disagreed with Whitson that K.B.M.'s complaints about the drive were due to Marsh, stating "[h]e's complained to his therapist about that and his therapist is saying . . . he may have a negative association with White Salmon just because of the

drive." RP (June 16, 2015) at 928-29. The court acknowledged K.B.M. was under "a lot of stress," and "I think the court has to respond to that." RP (June 16, 2015) at 929.

When the court entered its written order,[6] it entered four findings of fact under a section entitled "Substantial Change in Circumstances":

1. The mother has temporarily taken on a 2nd job which requires a change in transportation.
2. The court finds that the child is enrolled in sports and that up to two seasons of sports per year is beneficial to the child. The schedule needs to be adjusted to limit the impact on the child's involvement in sports.
3. Both parties agree that the mother should have major decision-making on non-emergency medical decisions and educational decisions.
4. The court finds that arbitration, subject to a right of review by the court, will provide a more efficient means of resolving disputes in the future.

CP at 295-96.

The court also checked a box indicating it was making a minor modification under RCW 26.09.260(5)(a). The court checked boxes indicating nonresidential components of the plan should be changed under RCW 26.09.260(10). The court indicated that statutory restrictions were inapplicable.

Marsh argues that the trial court's insufficient findings frustrate meaningful appellate review. She claims the court was presented with a nine-year-old, potentially suicidal child, and failed to make any significant modifications to the parenting plan, analyze the factors in RCW 26.09.260 (the modification statute) and RCW 26.09.191 (the restrictions statute), or resolve the material disputes at trial.

We are unpersuaded by Whitson's argument that the court's reasoning is clear when considered with its written findings and oral remarks. Although it is true that

---

[6] The court's findings of fact, conclusions of law, and decision are all stated in a King County Superior Court preprinted form order.

remand is unnecessary where the "written documentations or oral articulations" of the trial court demonstrate it considered the relevant statutory factors, that principle is not helpful here. In re Marriage of Horner, 151 Wn.2d 884, 896, 93 P.3d 124 (2004).

Whitson argues that because Marsh's petition alleged K.B.M.'s environment was detrimental, the court need only determine (1) whether a substantial change had occurred, and (2) whether the modification was in K.B.M.'s best interest. He claims these two findings can be pieced together based on the court's oral remarks, the commissioner's pretrial adequate cause order, and the order on modification. We disagree.

The adequate cause order has no binding effect on the trial court. It constitutes a "threshold determination" that adequate cause justifies a hearing on the petition. In re Custody of E.A.T.W., 168 Wn.2d 335, 342, 227 P.3d 1284 (2010). Whitson cites no authority to support his reliance on the adequate cause order.[7]

The trial court made four findings, quoted above, to support its modification order. These findings fail to resolve the core issues raised in Marsh's petition and the evidence presented during the modification hearing.

In stating where it was "headed," the court's remarks viewed in context lack indicia of a ruling on the merits. The same is true of the court's remarks during closing argument. We reject the proposition that any remarks made by the court before and during counsels' closing arguments in this case constitute the trial court's oral findings

---

[7] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

and conclusions. At the point when the challenged comments were made, trial counsel had yet to finish their closing arguments. The record shows that after closing remarks, the court recessed to consider its decision. The court never announced its decision in open court on the record. Three days later, in chambers, the court entered the final parenting plan proposed by Whitson and included the court's additional provisions written in by hand. A trial court's oral ruling is not final or binding unless formally incorporated into the findings, conclusions, and judgment. State v. Collings, 112 Wn.2d 303, 306, 771 P.2d 350 (1989).

In re Custody of Stell, 56 Wn. App. 356, 783 P.2d 615 (1989) is instructive. There, the trial court considered unrebutted expert testimony that placing a child with his father would be detrimental to his wellbeing. But it entered no findings on the issue of detriment. Stell, 56 Wn. App. at 368. The court concluded there was no proof of detriment to the child and no proof the father would neglect the child's needs. We reversed, holding the "trial court's findings of fact are, at best, marginally relevant to the issue of detriment to [the child]." Stell, 56 Wn. App. at 367. We noted, "[i]t appears that the trial court here simply disregarded [the expert's] explicit testimony despite the fact that he was appointed to assist the court." Stell. 56 Wn. App. at 368.

As in Stell, the court's findings here are entirely inadequate despite noting, "it's abundantly clear that [K.B.M.] is in extreme distress." RP (June 16, 2015) at 890. The court entered no findings relating to Dr. Carson's extensive opinions and recommendations.[8] She was appointed to investigate the child and family situation for

---

[8] Expert testimony presented in this case came primarily from Dr. Carson. She testified for two days and presented an extensive 59-page report consisting of review of voluminous documents, interviews with medical and counseling providers for K.B.M.,

the court and make recommendations. In effect, she acts as a neutral advisor to the court, is an expert in the status and dynamics of that family, and can offer a commonsense impression to the court. At the same time, the court is free to ignore the parenting evaluator's recommendation if they are not supported by other evidence or it finds other testimony more convincing. The record is completely silent as to how or if the court considered Dr. Carson's testimony. In particular, there are no findings resolving the concerns related to K.B.M.'s encopresis, the principal issue on which the commissioner found adequate cause for trial. We are not persuaded by Whitson's claim that "the court's principal concern was adjusting the parenting plan to permit K.B.M. to participate in sports." Br. of Resp't at 29.

It is well settled that under CR 52 the court must enter findings concerning the ultimate facts and material issues. Wold v. Wold, 7 Wn. App. 872, 875, 503 P.2d 118 (1972); CR 52. Here, we do not know what the court decided. Marsh petitioned for major modification of the plan based on alleged detriment to the child. Certain inferences may be derived from the final order. Obviously the court adopted and rejected certain options. It is unclear on what factual basis the court made its decision. Thus, the court's decision to adopt this parenting plan is impossible to review.

---

Marsh and Whitson, K.B.M's teachers and principal, friends of the parents, and a CPS caseworker. She interviewed and observed K.B.M., the parents, and grandparents. Dr. Carson also administered psychological assessments.

The court's findings conspicuously fail to mention Dr. Carson's testimony, opinions, or recommendations. And the court never mentioned the testimony of any of the trial witnesses. Indeed, the trial court made no findings at all on how it resolved conflicting testimony and evidence. The court gave no indication of its findings on the disputed facts either orally or in writing.

Guardian ad Litem

Marsh claims that the trial court erred by failing to appoint a guardian ad litem because the court appeared to believe Whitson's issues would "simply remit." Br. of Appellant at 39-40. We disagree.

Both parties agree that the decision to appoint a guardian ad litem is entrusted to the discretion of the trial court. Vo v. Pham, 81 Wn. App. 781, 784, 916 P.2d 462 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

The court stated it would not appoint a guardian ad litem because it would increase expenses and encourage conflict:

> This—the problems here—I mean, it's not rocket science, what's going to have to happen here. But $230,000 in fees is just staggering. It's just staggering.
>
> And so the problem that the Court has with the recommendation of the GAL is that that is just going to continue the financial bleeding here. The other problem I have is that it's going to continue this conflict. It creates a situation where each side is going to continue the recordkeeping on the other side, continue contacting the lawyer on what should I do now. It's continuing the attitude of trial and we need to move beyond that. We need to help these people resolve the conflict.

RP (June 16, 2015) at 890. Later, the court stated that appointment of a guardian ad litem would be "setting the two of you up for failure, frankly." RP (June 16, 2015) at 891.

Marsh argues that "[t]he only explanation for not appointing a [guardian ad litem] appears to be the court's concern with cost." Br. of Appellant at 41. The court's

-15-

rationale quoted above undermines this assertion.[9] The trial court properly exercised its discretion not to appoint a guardian ad litem.

Grandparents' Interest

Marsh contends that the trial court improperly considered the interests of K.B.M.'s grandparents. She argues the court was limited to considering the "circumstances" of the parents and child. Br. of Appellant at 42.

During the court's comments about where it was "headed," it mentioned K.B.M.'s relationship with his grandparents:

> [T]he life he experiences with his grandparents in the summer is idyllic. It's like something out of a storybook. The fishing, the—I mean, it's like camping but you have a house, too. And the Whitsons obviously are very loving grandparents and very sensible people, and they want what's best for him. . . . he's the only—the first grandchild. He's going to be showered with attention. He's going to get more attention than he ever wanted.

RP (June 16, 2015) at 892-93. The court encouraged the grandparents to participate in crafting an agreed plan:

> Okay. And, you know, it's up to you, but I—you know, I would recommend that the grandparents come in and be part of it. Thank you.

RP (June 16, 2015) at 896.

Marsh contends that because this was not an action for grandparent visitation, the court impermissibly considered the grandparents' interests under the modification statute and the restriction statute.

---

[9] Marsh's fifth assignment of error claims the court abused its discretion by ordering "arbitration as a dispute resolution mechanism." Br. of Appellant at 2. But her only support for this assignment of error is her contention, addressed above, that the court abused its discretion by failing to appoint a guardian ad litem. To the extent this assignment of error presents a different claim, we do not consider it. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Under RCW 26.09.260, the court was required to consider the "circumstances" of each party. Whitson lives with his parents and K.B.M. interacts with his grandparents during visits to White Salmon. Marsh cites no authority preventing the court from considering the living arrangements of a parent under the statute here. This claim fails.

Improper Judicial Comments

Marsh claims the trial court improperly testified at trial and considered evidence outside the record in fashioning a parenting plan.

Under Evidence Rule 605, "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Accordingly, a claim of improper judicial testimony constitutes an exception to RAP 2.5 that may be raised for the first time on appeal. "This evidentiary rule can apply even when the trial judge does not formally testify, but inserts his or her own personal experience into the decision-making process." In re Estate of Hayes, 185 Wn. App. 567, 599, 342 P.3d 1161 (2015).

Marsh challenges three comments. The first comment occurred in response to Marsh's closing argument that Whitson's "mental health profile," including Asperger's and bipolar, made him "not very willing" to work with people. The court stated:

> Bipolar challenge isn't really that much of a challenge when the person is on medication. I mean, for most peo—there's no profile of a bipolar personality. There are those people who are bipolar who are extroverts, some are introverts. When they get on medication that works, there usually is no affect on other people or really much. If it works, it works. The more challenging aspect of the—Mr. Whitson's issues is the Asperger's, understanding how people respond to him and how his son is feeling.

RP (June 16, 2015) at 907-08.

-17-

Second, the court questioned Dr. Carson on her opinion that bipolar disorder is treated using medication, medication monitoring, and psychotherapy. Dr. Carson stated that treatment should include "talk therapy" directed towards the disorder. RP (June 9, 2015) at 322. The court responded:

> It's just that it's pretty common that bipolar is treated by medication and medication monitoring by a psychiatrist and no talk therapy. But you're saying in this case there was talk therapy, which you feel was insufficient or didn't address the problems that were apparent.

RP (June 9, 2015) at 323.

Dr. Carson answered, "[i]t's a best practice, that medication and therapy are combined." The court responded, "I've never heard that before." RP (June 9, 2015) at 324.

Third, the court remarked before closing argument on its own experience with mental health issues and the challenges Whitson faced from Asperger's:

> The Court has a lot of experience with mental issues for a variety of reasons. I've been on many different calendars: been on mental health court, competency hearings, commitment hearings. I have mental health issues on both sides of my family. So Asperger's presents a difficulty, as everyone here I'm sure knows, in understanding why the other person does the things they do; reading those emotions; understanding how the other person feels; understanding how your behavior is affecting other people, how they're reading you. That's hard because it doesn't come naturally for people who have the symptoms that are called Asperger's. And I know it's not really called Asperger's, but all those things.
> So that's going to be an additional challenge for Mr. Whitson with [K.B.M.] because you're going to need to know how you come across to his providers. Obviously, you made a terrible impression.

RP (June 16, 2015) at 893-94.

Marsh contends the court's comments, considered in light of its refusal to impose "any effective restrictions," demonstrate it relied on its own "evidence" instead of the trial

record, and "interjected itself as a witness testifying as to Whitson's medical conditions and treatment." Br. of Appellant at 43, 46.

Whitson argues the comments constitute permissible, experience-based comments. He cites language in Grayson, "[o]ur judiciary benefits from and relies upon judges . . . whose personal experiences have taught them a practical understanding of the world we live in . . ." State v. Grayson, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005).

In Fernando v. Nieswandt, 87 Wn. App. 103, 940 P.2d 1380 (1997), the trial court declined to find that a video of a child stiffening when placed in a car seat constituted evidence of traumatization. The court stated "[f]or heaven's sake, I had three children and ten grandchildren and a couple of great-grandchildren, and I'm telling you, I've seen that happen so many times. Just to deprive the child of some trivial little thing, and they'll stiffen their back or they'll swing or they'll throw something." The court then rejected an expert's testimony, finding that "an expert can be found to support any position." Finally, the court opined that most children emerged from divorce "without any perceptible damage." Fernando, 87 Wn. App. at 109 n.1. We explained that the judge made illustrative comments about his own experience on the bench and as a parent to explain his decision. We concluded that these comments in no way compared this case to his own life to make a decision. Fernando, 87 Wn. App. at 109.

> Rather, [the judge] was acting as a trier of fact and applying common sense to the facts of this dispute to make a decision. When the judge is a trier of fact, illustrative comments phrased in the first person are not improper unless they evidence bias, prejudice, or other impropriety.

Fernando, 87 Wn. App. at 109.

As to the first challenged comment, the court's statements about Asperger's were consistent with the evidence presented. For example, Whitson's mother, Linda, testified

that people with Asperger's have a difficult time reading others—"[h]e has Asperger's, so sometimes he can't read people, but he absolutely reads his son." RP (June 16, 2015) at 821. She also stated that because of Whitson's Asperger's, he sometimes "can't read people's expressions. . ." RP (June 16, 2015) at 835-36. Whitson testified about his medication and treatment, including participation in classes to treat Asperger's. At trial, Marsh also emphasized Whitson's interpersonal challenges.

As to the bipolar remarks, there was no dispute that Whitson suffers from bipolar illness. The record shows these remarks did not influence the court's resolution of the disputed issues. The court indicated the more challenging issue was Whitson's Asperger's condition.

Regarding the second challenged comment on "talk therapy," the court was merely attempting to clarify Dr. Carson's opinion.

Finally, the court's third challenged comments amount to a passing statement about the court's familiarity with mental health issues. Like the other challenged comments, nothing in the record indicates the court's decision was a result of matters extraneous to the evidence.

Read in context, the remarks were made during the court's colloquy with counsel, encouraged the parties to settle the parenting issues, and responded to specific remarks made by counsel during closing argument. As in Fernando, the court did not compare this case to her own life to make a decision. She was applying common sense to the facts. And as a trier of fact, the court's illustrative comments are not improper. After closing remarks, the court thanked the attorneys for their views and the chance to "bounce ideas off you . . ." RP (June 16, 2015) at 941.

Judicial Misconduct

Related to Marsh's ER 605 argument is her claim that the court's remarks demonstrate bias. She argues the comments "demolish[ ] any confidence in the judge's neutrality" and require remand to a different judge. Br. of Appellant at 47.

"Due process, the appearance of fairness, and canon 3(D)(1)[10] of the Code of Judicial Conduct require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned." State v. Ra, 144 Wn. App. 688, 704-05, 175 P.3d 609 (2008). Under CJC Canon 2, Rule 2.2, judges "shall perform the duties of judicial office . . . without bias or prejudice."

A trial before an unbiased judge is an essential element of due process. In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). This court presumes a trial court is fair and will properly discharge its duty. In re Disciplinary Proceeding Against King, 168 Wn.2d 888, 904, 232 P.3d 1095 (2010). "The party seeking to overcome that presumption must provide specific facts establishing bias. Judicial rulings alone almost never constitute a valid showing of bias." Davis, 152 Wn.2d at 692. Where sufficient facts are alleged, the test is whether a reasonably prudent and disinterested observer would conclude there was a fair, impartial, and neutral trial. State v. Bilal, 77 Wn. App. 720, 722, 893 P.2d 674 (1995).

Marsh cites Sherman v. State, 128 Wn.2d 164, 905 P.2d 355 (1995), a case in which the trial judge directed his clerk to independently investigate a case by contacting

---

[10] Former CJC Canon 3(D)(1) is now codified at CJC Canon 2, Rule 2.11(A). That rule requires a recusal "in any proceeding in which the judge's impartiality might reasonably be questioned . . ." This includes "personal knowledge of the facts that are in dispute in the proceeding." Rule 2.11(A).

a party. The Supreme Court held this violated CJC Canon 3(A)(4)'s prohibition on ex parte communications. In determining whether recusal was warranted, the court explained that "actual prejudice is not the standard," but rather whether the judge's impartiality might be reasonably questioned. Sherman, 128 Wn.2d at 205-06. Sherman is inapposite. There is no allegation of ex parte contact at issue here.

Beyond her citation to Sherman, Marsh makes a bare assertion that the violation of the judicial canon is obvious.

The presumption is the trial court will be fair and discharge its duties without bias or prejudice. King, 168 Wn.2d at 904. Even assuming the court's comments constitute "testimony," Marsh fails to overcome the presumption of fairness or explain how the comments would lead a disinterested observer to conclude the proceedings were unfair. Marsh's contentions fall short of establishing bias or prejudice by the trial court.[11]

Attorney Fees

Marsh requests attorney fees under RAP 18.1 and RCW 26.09.140. Under RCW 26.09.140, we may award attorney fees based on the parties' need and ability to pay "after considering the financial resources of both parties . . ." RCW 26.09.140; In re Marriage of Rideout, 150 Wn.2d 337, 357, 77 P.3d 1174 (2003).

Marsh argues that because she supplies the majority of financial support for K.B.M., and Whitson's parents support him and pay his litigation expenses, she is at a disadvantage.

---

[11] Indeed, the record shows the trial court did adopt some but not all of Marsh's parenting plan proposals.

Although Marsh claims she seeks an award based only on Whitson's "apparent" ability to pay, we decline to make such an award on this record. The affidavits submitted by both parties do not demonstrate either has an appreciably greater need or "apparent" ability to pay.

## CONCLUSION

For the reasons discussed above, we remand to the trial court for entry of adequate findings for review on the existing record.[12] We also decline Marsh's request for attorney fees and costs.

WE CONCUR:

_____
_Spearman, C.J._

_____
_Leach, J._

_____

---

[12] Given our resolution, we deny Marsh's motion to supplement the record. We also decline Marsh's request to vacate the orders and remand to a new judge.