19 P.3d 1109 (2001)
In re the MARRIAGE OF Jeffrey K. POSSINGER, Appellant, and
Dawn L. Possinger, Respondent.
No. 45621-1-I.
Court of Appeals of Washington, Division 1.
March 19, 2001.
*1111 Jeffrey Possinger, Duvall, for Appellant.
Gregory M. Miller, Seattle, for Respondent.
*1110 KENNEDY, J.
To resolve this appeal we must determine whether under the Parenting Act of 1987 the superior court retains its equitable power to enter a temporary or interim parenting plan at the time of entry of a decree of dissolution of marriage, rather than a permanent parenting plan, and to reserve final disposition of parenting issues for a specified period of time pending significant changes that are expected to occur in the lives of the parents. To pose essentially the same question in slightly different terms, we must determine whether the court has the authority under the Parenting Act to adopt a permanent parenting plan that contains a residential schedule that will remain in effect for a specified period of time pending significant changes that are expected to occur in the lives of the parents, and then, at the end of that period of time, revisit the plan in order to make a final disposition of the parenting issues, applying the criteria contained in RCW 26.09.187 for establishing permanent parenting plans rather than the criteria contained in RCW 26.09.260 governing modification of parenting plans. Regardless of which way the question is posed, we answer it in the affirmative. The trial court did not exceed its authority under the Parenting Act by granting the father primary residential care of the parties' daughter for one year until she entered elementary school, and reserving entry of a final residential schedule until that time. Accordingly, the trial court did not err by applying the criteria for establishing a permanent parenting plan at the end of that year, rather than the criteria contained in the modification statute, in granting the mother primary residential care of the parties' daughter. Affirmed.

FACTS
Jeffrey K. Possinger and Dawn Forsythe Possinger were married in 1992, and their daughter Anna was born on February 2, 1993. The parties separated in March of 1996, after which they shared residential care of Anna by informal agreement.
In 1997, Jeffrey Possinger filed for dissolution of the marriage. The parties were able to resolve all the issues between them except as to the parenting of Anna. On March 10, 1998, following a three-day trial, the court dissolved the parties' marriage and entered a parenting plan containing a preschool residential schedule for Anna, who was then five years old, and reserving the decision on the school schedule until July 1999, just prior to Anna's entry into first grade.
At the time of trial, Dawn Possinger worked at Group Health from approximately 3:30 to 11 p.m., while Jeffrey Possinger attended law school full-time. Jeffrey cared for Anna during the evenings while Dawn worked, and Dawn took Anna back to her apartment at night and kept her until shortly before it was time for Dawn to go to work the next day. The parties divided weekend residential time evenly.
At the time of the dissolution trial, Dawn Possinger expressed her desire to change her work schedule to a day shift. And the court noted that "[t]here was talk of ... moving" by one or both of the parents. Clerk's Papers at 624 (Oral Decision). Jeffrey Possinger had not yet finished his first year of law school, and his future plans depended heavily upon whether he succeeded in law school or not.[1] After reviewing the circumstances of the parties, their respective testimonies, and the testimony of other witnesses including a family court caseworker, the court stated, "When I took your various scenarios and tried to work them out, and figure what is going to happen with this kid, it was very, very difficult for the Court to do." Id. The *1112 court noted the parties' respective work and school schedules were subject to change, there was mention of one or both parents moving, the child was due to begin kindergarten soon, and the child would begin first grade in approximately one year.
The court then stated,
What the evidence has shown is that the current residential plan is workable and has been workable; that the alternative that has been proposed [by the mother] is not workable in this Court's assessment. I say this because it's clear to me that these individuals are in somewhat of a transitional period, and I cannot get from what has been presented to the Court a clearer determination of what should be done on a long-term basis for this child.
So therefore,.. I am going to adopt the parenting plan proposed by the husband for a one year period of time until the child is in the first grade.
Id. at 626-27.
The court further explained:
I would like you to have this matter reviewed by this Court at the end of that year's period of time.
I am going to require that you go through mediation first before you come in for a review hearing. And what I want from you at that time, at that hearing, is some concrete plan as to how your schedules, your employment schedules, your child care, your kindergarten, your first grade, are going to work for this child.
Id. at 627-28.
Accordingly, in the residential schedule portion of the 1998 parenting plan, under the preschool subheading, the court ordered that "[p]rior to enrollment in school, the child shall reside with the father, except for [scheduled residential time with the mother that approximated the same schedule the parties had been utilizing prior to trial.]" Under a school schedule subheading, the order provided:
The court reserves decision on the school schedule until July, 1999. Prior to that date, the parents shall participate in mediation to resolve the school schedule for the first grade and thereafter. In the event the parties do not reach agreement in mediation, a hearing shall be conducted by the undersigned judge. This department retains jurisdiction for this issue.
Clerk's Papers at 12-13 (Parenting Plan). The order further provided that no presumption would be drawn from the designation of the father as the parent with whom Anna would reside most of the time pending the decision with respect to residential care to be made in July 1999.[2] Neither party objected on the record to the court's 1998 parenting decisions and no appeal was filed.
As contemplated by the 1998 parenting order, a hearing was held on July 19, 20 and 27, 1999, on the issue of Anna's post-kindergarten residential schedule. At the outset of the hearing, Jeffrey Possinger's counsel stated that "the very clear message I received from Your Honor is the only things you wanted to hear today is evidence and testimony regarding establishing the residential schedule for the upcoming school year." Report of Proceedings at 2. The hearing proceeded, without objection as to its purpose and effect.[3]
On August 16, 1999, the court rendered its oral decision, which is reflected in the written findings entered on October 11, 1999-summarized as follows: (1) Since entry of the decree of dissolution, Jeffrey Possinger had remarried *1113 and moved from his parents' residence into a home with his wife; (2) Dawn Possinger had also relocated and shared a residence with her grandmother in Poulsbo; (3) Subsequent to the decree of dissolution, Dawn had changed her work schedule from a night shift to a day shift; (4) as between the parents, Dawn was found to be "more capable of attending to the child's emotional needs given her development level and more capable of attending to the development of an appropriate interpersonal, parental relationship with both the father and extended family members[;]" and (5) regarding the parents' employment schedules, "the parties are fairly evenly matched." Clerk's Papers at 560-61 (Findings of Fact and Conclusions of Law).
The court then found, "[b]ased upon the criteria set forth in RCW 26.09.187" that "primary residential care should be awarded to the mother, as set forth within the Parenting Plan, which is entered simultaneously[.]" Id. at 561. A permanent parenting plan designating Dawn Possinger as the primary residential parent, allocating education and day-care decisions to her, and granting scheduled residential time to Jeffrey Possinger was also entered.
Jeffrey Possinger appeals, contending that the court exceeded its "jurisdiction" by postponing entry of a permanent residential schedule until the child entered school, so that the portions of the 1998 parenting plan relating to the postponement are "void" and should be treated as mere "surplusage", resulting in the preschool residential schedule being the permanent residential schedule. Jeffrey thus reasons that the 1998 parenting plan was a permanent plan that could only be changed by applying the standards contained in RCW 26.09.260 governing modifications, so that the trial court erred in applying the criteria found in RCW 26.09.187 governing initial parenting plans in reaching the parenting decisions made in August of 1999.

DISCUSSION
We first note that that if, as contended by Jeffrey Possinger, the 1998 parenting order was a permanent parenting plan, his challenge to the court's authority to postpone decisionmaking with respect to the permanent residential schedule is not timely because it was not appealed within 30 days following its entry. To the extent that the 1998 parenting order was a temporary or interim order, the challenge is untimely because no objection was raised in the trial court at the time of entry in 1998, nor in 1999, for that matter, until Jeffrey Possinger filed a motion for reconsideration following the decision in 1999. See RAP 2.5(a). Nor is Jeffrey Possinger's challenge to the trial court's "jurisdiction" a sufficient basis for untimely review under RAP 2.5. See Little v. Little, 96 Wash.2d 183, 195-98, 634 P.2d 498 (1981) (trial court has equitable power to make a temporary order as to child custody at the time of entering decree of divorce where welfare of child made postponement of final decree desirable; although trial court improperly failed to finally dispose of property at the time of entry of decree, its failure to do so did not render its judgment void; failure to dispose of ancillary matters at time of decree does not deprive the court of jurisdiction over the parties or the subject matter or the power to make a final disposition).
Nevertheless, Jeffrey Possinger's challenge to the court's application of the criteria contained in RCW 26.09.187, as opposed to the standards governing modification proceedings found in RCW 26.09.260, is timely, and in order to decide that issue, we must necessarily examine the court's authority to postpone final decisionmaking with respect to parenting issues at the time of entry of final decree of dissolution of marriage. Moreover, Jeffrey Possinger raises an issue of considerable public interest by his contention that the Supreme Court's ruling in Little that trial courts retained their equitable power to make temporary orders relating to child custody at the time of entry of a final decree under the 1973 marital dissolution Act is no longer good law under the Parenting Act of 1987. Accordingly, we will examine the trial court's authority to postpone making final parenting decisions at the time of entry of a decree of dissolution of marriage, as was done in this case in 1998.
The Parenting Act defines a "permanent parenting plan" as "a plan for parenting the child, including allocation of parenting *1114 functions, which plan is incorporated in any final decree or decree of modification in an action for dissolution of marriage, declaration of invalidity, or legal separation." RCW 26.09.004(2). The Parenting Act explicitly grants courts the authority to enter either a temporary parenting plan prior to entry of the decree of dissolution, or a permanent parenting plan at the time the decree of dissolution is entered. There is no express authority to enter a temporary or interim plan at the time of entry of a decree of dissolution of marriage; thus, it would appear that the Legislature did not contemplate a statutory "interim" parenting plan. But the authority of the superior courts over matters relating to the welfare of minor children is not derived from statute alone but also from common law:
[Equity courts] have always possessed the power, in whatever manner the question arose, of protecting and controlling the property and custody of minors. That power is broad and plenary and is not derived from statute. While applied in divorce and separation cases, its exercise is not limited to those actions....
... In cases involving the custody of minor children, whether it be by divorce or separation proceeding ... the court ... is thus exercising its inherent power and jurisdiction in equity....
We are of the opinion that the action between father and mother in respect to custody of their minor children is not one born of statute-rather the statute is declaratory of the law which already existed in the equity courts.
Chandler v. Chandler, 56 Wash.2d 399, 403-04, 353 P.2d 417 (1960).
Although the Legislature may certainly act in derogation of common law, where it has not expressed an intent to change existing law, and where the language of the new act is consistent with past policy, appellate courts will presume that the Legislature intended to continue the policy expressed in a prior statute dealing with the same subject matter, as that policy has been previously construed by the appellate courts. Little, 96 Wash.2d at 194, 634 P.2d 498.
In RCW 26.09.002, the Legislature states the policy underlying the Act:
In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm.
RCW 26.09.184(1) lists the objectives of permanent parenting plans, one of which is to "[p]rovide for the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications to the permanent parenting plan[.]" RCW 26.09.184(1)(c). RCW 26.09.184(1)(g) provides that parenting plans shall be designed, "[t]o otherwise protect the best interests of the child consistent with RCW 26.09.002."
Thus, under the Parenting Act, the best interests of the child continues to be the standard by which the trial court determines and allocates parenting responsibilities-as was true under previous statutory and common law. Moreover, although "[t]he Parenting Act revised the factors previously considered by the court under former law, [it] continues to give the trial court broad discretion when making [residential placements]" (footnotes containing citations omitted). In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993).
"`The major purpose behind the requirement of a detailed permanent parenting plan is to ensure that the parents have a well thought out working document with which to *1115 address the future needs of the children.'" In re Marriage of Pape, 139 Wash.2d 694, 705, 989 P.2d 1120 (1999) (as corrected Feb. 15, 2000) (quoting WSBA Family Law Deskbook § 45.3(3)). Ideally, every set of parents that asks the dissolution court to formulate the parenting plan because the parents have been unable to do so themselves would have their lives sufficiently organized so that the court could confidently devise a detailed permanent parenting plan, at the time of entry of the decree of dissolution of marriage. But as our Supreme Court has long recognized, this is not always the case. E.g., Potter v. Potter, 46 Wash.2d 526, 528, 282 P.2d 1052 (1955) (where welfare of child made postponement of a final decision desirable, trial court had equitable power to postpone final custody decision for a specified period in order to determine whether a mother with a history of mental instability could function as a custodial parent); Phillips v. Phillips, 52 Wash.2d 879, 884, 329 P.2d 833 (1958) (recognizing authority of trial court to defer final determination of issues in a custody modification action until after a trial period during which the effectiveness and propriety of a temporary order could be observed); Little, 96 Wash.2d at 194, 634 P.2d 498 (court retained authority under 1973 marital dissolution act to enter a temporary custody order at the time of entry of final decree, and to maintain jurisdiction to modify the order at a specified date, where best interests of children required such action; mother was planning to relocate and establish a new home for younger children; court wanted a period of time to observe father's success in caring for young children while working full time).
Certainly, the Parenting Act read as a whole expresses a legislative preference for a detailed permanent parenting plan to be entered at the time of final decree. But as has been true with the predecessor acts dealing with this same subject matter, the best interests of the child standard remains the paramount policy underlying the Act, and our Legislature has so directed in RCW 26.09.002 and 26.09.184(1)(g). It would be strange indeed to construe an act designed to serve the best interests of the children of divorcing parents in such a manner as to require trial courts to rush to judgment on insufficient evidence with respect to the children's best interests, or to ignore the fact that the lives of the parents are in such a state of transition that the children's best interests would be served by deferring long-term parenting decisions for a reasonable period of time following entry of a decree of dissolution of marriage.
Accordingly, we conclude that the Act is consistent with prior policy as pronounced by our Supreme Court in Potter, Phillips and Little, and hold that where the best interests of the child requires it, the trial court is not precluded by the Parenting Act from exercising its traditional equitable power derived from common law to defer permanent decisionmaking with respect to parenting issues for a specified period of time following entry of the decree of dissolution of marriage. We anticipate that such authority will be exercised sparinglyindeed, if the small handful of appellate cases dealing with this issue is any indication, trial courts have always exercised this authority sparingly, and rightfully sofor there is a strong presumption favoring finality of parenting plans and residential continuity in a child's life. See 20 Kenneth W. Weber, Washington Practice, Family and Community Property Law § 33.36, at 302 (1997); In re Marriage of Thompson, 32 Wash.App. 418, 421, 647 P.2d 1049 (1982). Thus, in the ordinary case, the sooner that a decree ensuring finality of the parenting plan and residential continuity can be entered, the better it is likely to be for the children of divorcing parents.
Having concluded that the trial court had authority to do as it did in 1998, i.e., to defer formulation of Anna's school residential schedule for a specified period of time, whether the 1998 parenting order was a "temporary order" as posited by the mother in this case, or a "permanent parenting plan" as posited by the father becomes largely semantic. Given the nomenclature and definitions contained in The Parenting Act, we prefer to call it a permanent parenting plan containing an interim residential schedule that covered Anna's preschooling and that was subject to further order of the court in July 1999 with respect to Anna's schooling. Under either label, the trial court properly *1116 considered the criteria contained in RCW 26.09.187 in formulating the 1999 parenting order, rather than treating the matter as a modification proceeding under RCW 26.09.260.[4] The court's formulation of a residential schedule to cover Anna's school years was its initial decision in that regard, not a modification of its prior decision.
Jeffrey Possinger has challenged only the trial court's authority to proceed as it did in 1998 and 1999; he has not otherwise challenged the trial court's exercise of discretion, and does not contend that the trial court's 1999 findings of fact regarding the parents' respective circumstances and parenting abilities, and regarding Anna's best interests, are not supported by substantial evidence in the record. Unchallenged findings are verities on appeal. In re Marriage of Vander Veen, 62 Wash.App. 861, 865, 815 P.2d 843 (1991). Accordingly, we do not revisit the trial court's findings regarding the parents' respective circumstances and parenting abilities. Neither do we disturb the trial court's findings with respect to Anna's best interests.
Dawn Possinger requests attorney fees pursuant to RAP 18.1. RAP 18.1(c) requires that the requesting party file a financial affidavit with the court no fewer than 10 days before the date set for oral argument. She failed to do so. Thus, we will not consider her request for attorney fees on appeal. See In re Marriage of Crosetto, 82 Wash.App. 545, 565-66, 918 P.2d 954 (1996).
Affirmed.
NOTES
[1] Mr. Possinger has since graduated from law school and been admitted to the Washington State Bar Association.
[2] The order also provided that, "should the mother's work schedule change, this court retains jurisdiction to entertain a minor modification of the Parenting Plan." Clerk's Papers at 15 (Parenting Plan). On November 19, 1998, Dawn Possinger petitioned the court for both major and modification of the plan, in part because she had changed her work schedule from nights to days, and in part for other stated reasons not relevant to this appeal. The family court commissioner summarily denied the petition for major modification and reserved the request for minor modification for disposition by the same trial judge who had retained jurisdiction over the parties parenting issues.
[3] We summarily reject Jeffrey Possinger's claim that he was not aware of the effect of the 1998 order. The court was clear in its oral and written rulings that it was reserving its decision on the child's post-kindergarten residential schedule until July 1999, and the record reflects that the parties were fully aware of that fact.
[4] Under RCW 26.09.260(1), a court may not modify a parenting plan or custody decree unless facts have arisen that were unknown at the time of the prior decree or plan, or there has been a substantial change in the circumstances of the child or the nonmoving party, and the modification is in the best interest of the child.

RCW 26.09.260(2) provides that the residential schedule of the decree or parenting plan shall be retained unless:
(a) The parents agree to the modification;
(b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan;
(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; or
(d) The court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan, or the parent has been convicted of custodial interference[.]