FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 DEC 24 AM 10: 23

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parenting and Support of | No. 76270-2-I |
| A. P., | (Consolidated with No. 77470-1-I) |
| Child, | DIVISION ONE |
| DAVID PARSONS, | |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| TANYA GOODMAN, | |
| Petitioner. | FILED: December 24, 2018 |

LEACH, J. — In this consolidated appeal, Tanya Goodman challenges a permanent parenting plan for the parties' four-year-old son, A.P., a number of related orders, and the trial court's decision about maternity expenses.

Goodman fails to show that the court abused its discretion by making any of these decisions, and substantial evidence supports each of the court's findings of fact that she challenges. We affirm.

## FACTS

This case involves two consolidated appeals by Goodman. The first challenges the original permanent parenting plan adopted by Judge William L.

Downing. The second challenges Judge Kristin Richardson's clarification of that

plan after Judge Downing retired.[1]

### Judge Downing

Tanya Goodman and David Parsons are the parents of A.P., born August

7, 2014. On July 1, 2015, Parsons filed this parentage action, asking the court to

adopt a parenting plan. The court appointed Melanie English, PhD, as a

parenting evaluator to provide the court with an interim report. In October 2015,

the court adopted a temporary parenting plan.

Jennifer Wheeler, PhD, later replaced Dr. English as parenting evaluator.

She issued a parenting evaluation report in August 2016. Her report

recommended that the University of Washington conduct an evaluation of A.P.,

to address concerns that A.P. was on the autism spectrum. On October 25,

2016, after a trial, the court adopted a permanent parenting plan. A.P. was later

diagnosed as being on the autism spectrum.

Both Parsons and Goodman then asked the court to reconsider and clarify

the permanent parenting plan. On November 16, 2016, the court adopted an

amended permanent parenting plan. On November 30, 2016, Goodman filed a

---

[1] Judge Downing conducted the trial and developed and adopted the permanent parenting plan and amended permanent parenting plan. He retired, and Judge Richardson was assigned to the case.

second request for reconsideration, which the court denied on December 2, 2016.

## Judge Richardson

On May 5, 2017, Parsons asked the court to clarify the residential schedules in the amended permanent parenting plan. A family law commissioner denied his request. Parsons then asked Judge Richardson to revise this decision. Judge Richardson denied this request. Parsons asked the court to reconsider this decision, and it did, clarifying the amended permanent parenting plan schedule.

## STANDARD OF REVIEW

Appellate courts use a manifest abuse of discretion standard to review a parenting plan.[2] Similarly, appellate courts use an abuse of discretion standard to review the grant or denial of a motion for reconsideration.[3]

A court abuses its discretion when it makes factual findings that the record does not support or uses untenable reasoning to make legal conclusions.[4] We review the record to see if substantial evidence supports challenged findings of fact.[5] We do not reweigh the trial court's credibility determinations or weigh

---

[2] In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).
[3] Kohfeld v. United Pac. Ins. Co., 85 Wn. App. 34, 40, 931 P.2d 911 (1997).
[4] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).
[5] Black, 188 Wn.2d at 127.

conflicting evidence.[6]   If substantial evidence supports the findings of fact, we then ask if they support the trial court's conclusions of law.[7]

RCW 26.09.184 and RCW 26.09.187 describe the objectives and define the criteria for a permanent parenting plan.  These statutes, RCW 26.09.002, and family law in general require that Washington state courts use the best interest of the child as the standard for determining and allocating parental responsibilities. Goodman contends that this court should review a parenting plan de novo to decide if it is in the best interest of the child because a best interest determination is a legal conclusion.  We disagree.

What is in the best interest of a child is an ultimate factual decision supported by the trial court's findings on many underlying factual issues that vary from case to case, including what will best maintain "a child's emotional growth, health and stability, and physical care."[8]  These issues also include "the cultural heritage and religious beliefs of a child"[9] and the factors identified in RCW 26.09.187(3).  Resolution of these factual issues includes an evaluation of the credibility of the parents, experts, and lay witnesses.

---

[6] Black, 188 Wn.2d at 127.
[7] In re Marriage of Myers, 123 Wn. App. 889, 893, 99 P.3d 398 (2004).
[8] RCW 26.09.002.
[9] RCW 26.09.184(3).

Goodman also contends that we should review de novo a trial court finding that a health care decision did not involve an "emergency." Again, we disagree. This characterization involves fact-finding and not a resolution of what the word "emergency" means.

Goodman cites In re Parentage of J.M.K.[10] as support for both claims for de novo review. But J.M.K. involved appellate review of a summary judgment decision where a court resolved issues as a matter of law based on undisputed facts.[11] It provides no guidance for appellate review of a trial court parenting plan adopted after a trial where the parties vigorously contested the facts.

## ANALYSIS

Consistent with her de novo review claim, Goodman's extensive briefing largely reargues the evidence to show that the trial court abused its discretion by not limiting the residential time between Parsons and his son. Her arguments assume that the amount of residential time Parsons has with A.P. is not in the child's best interests, particularly because he is on the autism spectrum. Because substantial evidence supports the trial court's decisions and Goodman identifies no legal error entitling her to relief, we affirm.

---

[10] 155 Wn.2d 374, 119 P.3d 840 (2005).
[11] J.M.K., 155 Wn.2d at 377-78.

-5-

Motions for Reconsideration

Goodman claims that both Judge Downing and Judge Richardson should have denied Parsons's requests for reconsideration because those requests did not expressly describe one of the causes for relief listed in CR 59(a). This argument exalts form over substance. CR 59(b) requires a party requesting relief to include in his request "the specific reasons in fact and law as to each ground on which the motion is based." The text of Parsons's requests satisfied this requirement because it informed the court about the facts and law supporting Parsons's entitlement to the relief he sought.

Goodman claims that Wuth v. Laboratory Corp. of America[12] supports her position. It does not. In Wuth, the appellant did not identify the basis for a motion for reconsideration.[13] This court's opinion examined each possible basis for the appellant's request and decided that none supported a conclusion that the trial court abused its discretion.[14] We did not decide that the trial court should have denied the request because it failed to state a specific ground listed in CR 59(a). This court reviewed the request's merits despite the absence of any statement of specific grounds listed in CR 59(a). So Wuth does not support a

---

[12] 189 Wn. App 660, 359 P.3d 841 (2015).
[13] Wuth, 189 Wn. App. at 693.
[14] Wuth, 189 Wn. App. at 693-96.

claim that the trial court abused its discretion by considering motions for reconsideration that did not state specific grounds under CR 59(a).

### Judge Downing's Decisions

Goodman challenges certain trial court findings of fact, conclusions of law, and its maternity expenses decision. She also contends that the trial court abused its discretion in adopting the permanent parenting plan. Finally, she claims it abused its discretion by granting Parsons's November 4, 2016, motion for reconsideration and clarification in its November 2016 order and it erred in denying Goodman's November 30, 2016, motion for reconsideration.

*A. Denial of Maternity Expenses in Final Parenting Plan*

Goodman challenges the trial court's failure to award her maternity expenses. She claims that Parsons agreed to share all expenses 50-50 and that exhibit 223 accurately documents these "expenses."

Goodman correctly notes that RCW 26.26.130(3) gives a court discretion to award maternity expenses. Since a court may but is not required to award expenses, a court does not necessarily abuse its discretion by denying recovery of those expenses. Goodman offers no persuasive argument that the Downing court abused its discretion.

-7-

Goodman claims that Parsons agreed to pay 50 percent of all maternity expenses. Parsons denies any agreement, and the record does not support Goodman's claim. Parsons also notes that he paid a substantial sum for maternity expenses. In her reply brief, Goodman for the first time identifies the evidence she relies on. She quotes part of an e-mail and Parsons's trial testimony. The e-mail does not appear at the location in the 389-page exhibit Goodman cites.

> On direct examination, Parsons testified,
>
> And, you know, ultimately we got to what's his name, where he'll be with Mom, we'll do a 50/50 arrangement in everything. And I remember those conversations very, very well. It was—at the end of the day, the best thing for that child is two parents in his life. How do we—how do we share in everything from finances to time with him to doctors' appointments? And we came to agreement that 50/50 was what we wanted.
>
> And then we started working through, well, how does that actually work? And the more conversations we had about how that actually worked, the less I felt we actually had agreed—had continual agreement against those things that we had discussed early on.

This testimony does not establish Parsons's agreement to pay 50 percent of all maternity expenses. Neither would the alleged e-mail statement.

Goodman also does not show that exhibit 223 provides "the documentary proof of the uninsured costs" subject to a cost-sharing agreement. This exhibit collects various spreadsheets, interspersed with a few bills, without any itemization or explanation adequate to support her claim. Goodman also

-8-

identifies no evidence establishing the reasonableness or necessity of the expenses. Goodman has not shown that the court abused its discretion when it denied her maternity expenses.

B.    Grant of Parsons's November 4, 2016, Motion and Denial of Goodman's November 30, 2016, Motion[15]

Goodman contends that the trial court abused its discretion by granting Parsons's November 4, 2016, request for reconsideration and clarification of the permanent parenting plan. Parsons's motion included a request that the court clarify the parenting plan by stating that the summer vacation residency schedule started with the following summer. Goodman also claims that the court should have granted her request for reconsideration filed in response to the trial court's decision to grant Parsons's request.

i. Parsons's Motion

Goodman raises three concerns about Parsons's November 4, 2016, motion for reconsideration and clarification. First, she suggests that the court should have dismissed it because the request did not describe any of the causes listed in CR 59(a). We rejected that argument earlier in this opinion.

_____

[15] Parsons's motion was submitted November 4, 2016. Goodman's motion appears to have been filed on November 30, 2016, contrary to her assertion in her brief that it was filed on November 25.

Second, Goodman contends that Parsons provided the court with hearsay evidence[16] by including the following sentences in his reply in support of his motion: "This topic was discussed with Dr. Wheeler among both attorneys . . . . Specifically, Dr. Wheeler did not recommend that Mr. Parsons' summer vacation time begins when [A.P.] reaches age 5." Goodman has not shown that the court relied on this statement in making its decision. Thus, she has not shown that the court, in granting the motion, abused its discretion.[17]

Finally, Goodman contends that Parsons's request does not meet the requirements for "newly discovered evidence" or that "substantial justice" was not done, the two grounds Parsons identified in his reply materials supporting his request.

The court's order does not identify either as forming the reason for its decision. We agree with Goodman that her "behavior and interpretation of the current parenting plan" was not the type of "new evidence" contemplated by CR 59(a)(4). A party's compliance with an order is not new evidence that was unavailable at the time of trial but something that happens after the trial and not included in the "new evidence" ground described in CR 59(a)(4).

---

[16] She indicates that this is a violation of King County Super. Ct. Local Fam. Law R. (KCLFR) 6(e)(4).

[17] To show abuse of discretion, the appellant must point to errors in adoption of the factual findings or untenable reasoning. Black, 188 Wn.2d at 127; Myers, 123 Wn. App. at 892-93.

Goodman fails to show that the court abused its discretion by finding that the original parenting plan did not provide substantial justice as described in CR 59(a)(9) and clarifying the plan to remedy this. "'The major purpose behind the requirement of a detailed permanent parenting plan is to ensure that the parents have a well thought out working document with which to address the future needs of the children.'"[18] Evidence presented by Parsons showing the parties' disagreement about the specifics of the residential schedule was sufficient to support the court's decision that the final parenting plan should be amended to reduce conflict and better fulfill the best interest of the child standard.

To show that the court should not have clarified the parenting plan, Goodman claims that "Dr. Wheeler emphasized that all residential time should primarily be with [Goodman] for at least the next three years as being important for him [sic] to meet [A.P.'s] developmental needs and assuming he is not autistic." Goodman does not accurately describe Dr. Wheeler's views[19] and does not show that the court abused its discretion when it granted Parsons's request and clarified the final parenting plan.

---

[18] In re Marriage of Pape, 139 Wn.2d 694, 705, 989 P.2d 1120 (1999) (quoting 2 Wash. State Bar Ass'n, Family Law Deskbook § 45.3(3) (rev. ed. 1996)).

[19] Dr. Wheeler said that Goodman should be the "primary parent through at least 36 months."

ii. Goodman's November 30, 2016, Motion

Goodman also claims that the court should have granted her November 30, 2016, request for reconsideration. She asked that the court delay the residential summer schedule until A.P was five years old. Primarily, she contends that A.P.'s posttrial autism spectrum diagnosis required a delay in the summer residential schedule until A.P. was five to ensure that substantial justice was done. So, Goodman claims, the court abused its discretion by rejecting her requested delay.

Goodman also claims that Parsons's introduction of what she calls hearsay evidence surprised her and that no evidence supports the court's decision. Even if Parsons introduced hearsay evidence, this, without more, does not establish adequate surprise to support a request for reconsideration. We find unpersuasive her assertion that "there was no 'evidence to justify . . . the decision.'"[20] Goodman does not address the evidence the court relied upon when it granted Parsons's motion. Instead, she relies upon her assertion of hearsay. She then asserts substantial justice was not done because of her surprise and her unsubstantiated claim that no evidence supports the court's order. This circular reasoning fails to persuade us that the trial court abused its discretion.

---

[20] CR 59(a)(7).

To further support her claim that substantial justice was not done, Goodman provided the typed voice-mail message from Dr. Wheeler she submitted with her November 30, 2016, motion[21] and states that "[w]ith the post-trial discovery of [A.P.] being autistic and given that the developmental age of autistic children is typically lower than their chronological age," the court should remove the "accelerat[ion] of the 2 weeks of summer vacation to each parent."

Goodman contends that this evidence shows that the court abused its discretion by not agreeing that the autism spectrum diagnosis meant that justice could be served only by delaying the imposition of A.P.'s summer residential schedule until he was five. Wheeler's statement about autism spectrum children and the submitted document do not require this conclusion or show that the court reached an untenable conclusion when it denied her request. Goodman fails to establish that the court abused its discretion.

*C. October 2016 Order, Final Parenting Plan, Findings of Fact 1-5, 8, 9, and 12-15*

Goodman challenges the sufficiency of the evidence supporting multiple findings of fact relating to the permanent parenting plan. She contends that these findings have two common problems. First, "that they attribute to

---

[21] This document is not authenticated or demonstrated to be an exception or exemption to a hearsay statement. ER 801, 802, and 902.

[Goodman] behavior that prevented implementation of the court's goal of co-parenting (which it did not define) even though the undisputed evidence was that it was [Parsons], not [Goodman], who prevented it." Second, she claims that the court found that her "behavior . . . undermin[ed] [Parsons's] relationship with [A.P.] even though the undisputed evidence was that she proactively supported their relationship while it was [Parsons] who proactively undermined her relationship with [A.P.]." We disagree.

Substantial evidence shows that Goodman did not always support the co-parenting relationship. A co-parent is "a person . . . who shares parental duties with a custodial parent."[22] Dr. Wheeler, throughout her evaluation, raised concerns about Goodman's ability to work with Parsons to "share parental duties" in parenting A.P. Goodman contests this finding with a single page of text messages (out of more than 300 printed pages). The only clear relationship between this page of text messages and Goodman's contention is that both parties used the term "co-parent" in text messages.[23]

Evidence that Goodman secretly surveilled Parsons and falsely suggested to third parties that he abused A.P. supports the court's finding.

---

[22] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 75a (2002).

[23] For example Goodman texted, "If you don't want to be [sic] co-parent, than [sic] you are not." Parsons texted, "At first you used the word friendship. Now we're using the word coparent. Those are two ends of the spectrum neither of which sounds like you want."

-14-

Goodman also cites trial testimony from a neighbor, who went with her to pick up A.P., that Parsons sometimes had to return into his building to retrieve A.P.'s security blanket. The neighbor did not suggest that Parsons purposely impeded the parenting relationship. Goodman also cites her own testimony to the effect that Parsons did not have the blanket once and that A.P. was often tired and upset by the time he got to the car after being at his father's. Some evidence that Parsons may have at times impeded her relationship with A.P. does not undermine the court's finding that Goodman undermined the relationship.

Goodman's claim about "two common" errors infecting the findings fails. Her challenges to individual findings also fail.

i. Finding of Fact 1

Goodman contends the court erred in finding of fact 1 by using the phrases "it was too late" and "drifted entirely apart." This finding states in part,

> Long before they had a chance to develop any real familiarity, sense of trust or shared vision of the future, David Parsons and Tanya Goodman conceived a child. That child—[A.P.]—arrived on August 7, 2014 and by then it was too late. [A.P.'s] parents, who had never even advanced to the "couple" stage, had drifted entirely apart.

The two challenged phrases reflect subjective findings more than adequately supported by substantial evidence. The acrimonious content of some

-15-

of the parties' text messages during Goodman's pregnancy alone sufficiently support these findings. Her own statement, recorded in Seattle Children's Hospital Clinic notes, that after she became pregnant Parsons "disengaged [and] [s]he was on her own" provides additional support. Goodman's evidence of a "consistent and constant flow of mostly positive communications" and agreements does not negate contrary evidence showing that they "drifted entirely apart."

Goodman also complains that these findings are not material. She does not explain why she challenges them or devote a part of her brief to them if this is true. If they played no role in the court's decisions, she does not explain how they prejudiced her.

ii. Finding of Fact 2

Goodman challenges the court's statements in finding of fact 2 that Parsons "began trying to see that a framework for co-parenting might be put in place" and that Parsons "felt increasingly shut out of full participation in [A.P.'s] life." The essence of her claim appears to be that the court made an improper "implicit finding that [A.P.'s] future is doomed unless his parents can co-parent." But the court did not make any such "implicit finding." The only mention the court makes of co-parenting appears in finding 2, referring to Parsons's attempt to co-

parent.[24]  Nowhere does the court predict a doomed future if co-parenting does not occur.

Goodman's statement in the context of her argument that both parties attempted to "develop agreements on parenting issues" undermines her argument that Parsons did not attempt to work with her in parenting A.P.  The court did not find that only Parsons attempted to work on parenting.  Further, the record provides substantial additional evidence that Parsons attempted to provide structure to work with Goodman in parenting A.P.

Finally, when explaining why the trial court erred in finding that Parsons "felt shut out," Goodman deletes "felt" from her discussion, claiming it is immaterial.  Having changed the meaning of the finding to create a straw man, she goes on to try to establish that Parsons was not shut out of A.P.s life.  This useless exercise does not advance her argument.  Our review of the record discloses substantial evidence to support the court's finding of fact 2.

iii. Finding of Fact 3

Goodman challenges the phrases "rather shallow" and "less worthy forces at work" in finding of fact 3.  This finding states, "In those early months, Ms. Goodman's protectiveness toward the infant served to limit the father's role.  This

---

[24] Indeed, the court may have drawn for this finding in part on the language Goodman herself supplied where she and Parsons texted about "co-parenting" prior to A.P.'s birth.

may have been due in part to the rather shallow recommendations of a naturopathic physician. In time, it would become clear there were also other, less worthy, forces at work."

Goodman does not directly attack the core of the finding—that Goodman's protectiveness "served to limit the father's role." But she does claim that the court conflated her negative "attitude" about Parsons with negative "behavior" that she contends never happened.

Dr. Wheeler's parenting evaluation provides ample evidence of both attitude and behavior. Dr. Wheeler found that Goodman tended to "distort/misrepresent" information about Parsons in a manner that was "unduly negative." She further indicated that this "attitude" manifested itself in misleading and harmful comments about Parsons that Goodman made to Child Protective Services and the King County Sheriff's Office. Finally, Dr. Wheeler notes that Goodman's distorted "attitude" did affect her behavior and ultimately Parsons's role in his son's life. In other words, that it "served to limit" Parsons's role.

Rather than attacking the significant part of this finding, Goodman takes adjectives out of context ("shallow" and "less worthy") and quibbles that the evidence does not support their use. Whether or not the physician made shallow recommendations or the other forces were less worthy does not affect the finding

-18-

that Goodman acted on her negative feelings and restricted Parsons's relationship with his son.   Further, Goodman does not persuade us that a reasonable person hearing the trial could not find the recommendations of the naturopath physician "rather shallow" or the presence of "less worthy forces."

Goodman's challenge to finding of fact 3 fails.

iv.  Finding of Fact 4

Goodman challenges the court's finding that "there was never any legitimate reason for doubts about . . . Parsons' ability to parent."   Substantial evidence supports this finding.   Both parenting evaluators made clear they had no concerns about the ability of either Parsons or Goodman to parent A.P.   Also, evidence before the court showed that through his relationship with his older son, Parsons demonstrated the capacity to parent effectively.   Goodman counters with assertions that Parsons had a history of involving his other son with girlfriends, had only recently married for a third time, and had a history of domestic violence.   Her argument fails to recognize that an appellate court does not reweigh conflicting evidence.   Substantial evidence supports the finding that Parsons was a capable parent.

v. Finding of Fact 5

Goodman claims that the court should not have made finding of fact 5 because it "is not material." This finding, in part, states, "During the first year-and-a-half of [A.P.'s] life, Ms. Goodman made something of a practice of clandestinely monitoring the activities of [A.P.] and/or Mr. Parsons. She did this through paid private investigators' services and by secreting tracking and recording devices in [A.P.'s] diaper bag."

An appellate court reviews a finding for substantial evidence, not materiality. Goodman does not dispute that she hired private investigators to pursue Parsons and his family during "the first year-and-a-half of [A.P.s] life."[25] Goodman suggests that the fact that the investigators "worked for all of one week in August of 2015 more than a year before trial" shows that the court erred in finding she engaged in clandestine monitoring. It does not. In addition, contrary to Goodman's assertions, substantial evidence shows that Parsons was unaware of at least some of the surveillance, making it "clandestine."

Substantial evidence supports the finding that Goodman engaged in clandestine surveillance.[26]

---

[25] A.P. was born in August 2014.

[26] Goodman concludes this section of the brief with the following statement: "Thus her use of these devices was not clandestine and was moot as of eight months before trial. Nor is the finding material because it does not support any aspect of conclusion of law #2." She does not explain why the use

### vi. Finding of Fact 8

Goodman also challenges finding of fact 8, which states in part,

> December of 2015 began with Ms. Goodman secretly taking her
> son for a consultation with child abuse specialist Dr. Kenneth
> Feldman at Children's Hospital. It is not clear what Dr. Feldman
> was being asked but he reports informing the mother of his
> conclusion: "I do not see historical or physical evidence to suggest
> physical abuse."

She does not focus on the substance of this finding—that the child abuse specialist found no evidence of abuse. Instead she asserts that substantial evidence does not support the phrase, "It is not clear what Dr. Feldman was being asked." She admits that the report made by Dr. Feldman was clear "on its face" and that the finding accurately reports the specialist's conclusion reported to her. So for purposes of reviewing the merits of the court's findings and whether they support its parenting plan decision, this challenge is frivolous.

### vii. Finding of Fact 9

Goodman challenges the finding that a visit to urgent care to treat A.P.'s burn blisters was a nonemergency visit and claims generally that this finding is not supported by substantial evidence. Finding of fact 9 states,

---

of the devices is "moot" or why the conclusion of law, that the adopted parenting plan is in the best interest of the child, is not supported by a finding that she surveilled Parsons clandestinely. The court was well within its discretion to consider this sort of behavior as it related to the ability of the two parents to interact in the future and therefore it is not an obviously moot consideration.

A few weeks later, she did come back [to Children's Hospital]. This was after she had evidently discovered some blisters on the fingertips of her toddler son. As with the earlier visit, Ms. Goodman did not consult with the child's father to make this non-emergency healthcare decision but took him in to Children's urgent care center in Bellevue. With her giving an account that the injury had occurred in the care of the father (with various unflattering background detail included), it wasn't long before, predictably, not only Children's Hospital in Seattle ("for documentation") but also Child Protective Services and the King County Police were involved.

Substantial evidence supports the finding that the visit was not an emergency visit. Between the time Goodman discovered blisters and the time she took A.P. to the hospital, Goodman fed A.P., washed him, put him down to nap, and made several phone calls. She responds that she was a new mother of a 16-month-old baby and that she had taken him in for a "prescription to treat the blistering and for diagnosis" after talking to her friend Carol on the phone. A reasonable fact finder could view this evidence as showing that she did not view the blisters as an emergency. Even if one views this evidence as showing that she did treat the burns as an emergency, an appellate court does not reweigh conflicting inferences reasonably drawn from testimony.

Substantial evidence provided by both Goodman and Parsons supports the court's finding of "non-emergency" and, more generally, finding of fact 9.

viii. Finding of Fact 11

Goodman claims that finding of fact 11 is not material. As we have noted, materiality is not the standard by which this court reviews trial court findings. And

finding 11 summarizes a court's denial of Goodman's relocation request, a decision she does not challenge.[27]

ix. Findings of Fact 3, 12, 13, 14, and 15

Goodman challenges findings of fact 3, 12, 13, 14, and 15. She claims that no substantial evidence proves that her negative feelings impacted her support for Parsons's relationship with A.P. We disagree.

Dr. Wheeler's report summarizes sufficient evidence of surveillance and micromanaging of Parsons's time with A.P. to support the court's finding. She also specifically identifies a risk of Goodman's increasing restrictions on Parsons's time with A.P. Goodman testified about her overt hostility toward Parsons during the case.

Goodman attempts to undermine this evidence by pointing to her testimony that when Parsons made unreasonable requests she responded with limits on his access to A.P. She also claims that she readied A.P. in a positive

---

[27] The finding states,

In late January 2016, Ms. Goodman began declaring her desire to relocate with [A.P.] to California. In early February, in connection with this formal request, she filed a new proposed parenting plan. Her proposal was to have a finding made that Mr. Parsons had committed "neglect" and to have orders entered that entirely denied [A.P.] any overnights with his father and that gave her mostly sole decision-making. In March, the assigned trial judge denied the relocation request, finding it "was not made in good faith" but rather "for the purpose of attempting to prevent the father from seeing the child."

manner for visitation and that transitions to Parsons were positive but that A.P. was agitated when returned, that Parsons withheld A.P.'s blanket, and that she brought the neighbors to help ensure the transition was more positive. Goodman again fails to appreciate the role of the appellate court, which does not reweigh conflicting evidence. Substantial evidence supports the findings that Goodman's negative feelings resulted in at least some instances of negative behavior.

Finally, Goodman provides no argument supporting her challenges to findings 15 and 16. So we do not consider them.

### D. Residence Schedules and A.P.'s Autism Spectrum Diagnosis

Goodman challenges the residential schedules described in the permanent parenting plan.[28] She contends that the court abused its discretion by adopting the schedule because the court did not adequately consider RCW 26.09.187(a)(i), (ii), (iv), and (vii) and acted before knowing whether A.P. was on the autism spectrum. She also contends that the court should have established a review hearing or waited to finalize the parenting plan until the diagnosis was completed.

---

[28] Goodman does not indicate which parenting plan she is contesting but given that she identifies the ages for the phases, it appears to be the first permanent parenting plan entered before the court deleted the ages.

Courts have broad discretion when adopting permanent parenting plans.[29]

When exercising this discretion, a court must consider several factors including

the following:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> . . . .
> (iv) The emotional needs and developmental level of the child;
> . . . .
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.[30]

A court may decide to delay finality but "in the ordinary case, the sooner

that a decree ensuring finality of the parenting plan and residential continuity can

be entered, the better it is likely to be for the children."[31]

i. RCW 26.09.187(3)(a) Factors

Goodman claims the court did not consider RCW 26.09.187(3)(a) factors

(i), (ii), (iv), and (vii) before it adopted the permanent parenting plan.  She does

not point to anything in the record to support this bare claim, so it fails.

She also claims the court abused its discretion by failing to consider these

same factors "as they exist[ed] at the time of trial," quoting In re Marriage of

---

[29] In re Marriage of Possinger, 105 Wn. App. 326, 336-37, 19 P.3d 1109 (2001).
[30] RCW 26.09.187(3)(a).
[31] Possinger, 105 Wn. App. at 336-37.

Littlefield,[32] where the Washington Supreme Court reversed a trial court decision ordering a mother to return to Seattle from California after the father had agreed to her move out of state.[33] The Littlefield court stated that the superior court does not have authority to "create ideal circumstances for the family" but must work with the circumstances before it "at the time of trial."[34] Goodman's assertion that Littlefield means the superior court must find evidence of circumstances as they will exist at each exact interval of a child's life misreads the opinion, flies in the face of common experience, and advocates a rule that would be nearly impossible to implement.

Courts routinely enter parenting plans for children that extend through their high school years before the children enter kindergarten.[35] Furthermore, RCW 26.09.260 provides a vehicle for modifying a parenting plan to ensure that the plan continues to advance the best interest of the child after circumstances substantially change. The court acted within its discretion in adopting a parenting plan with residential schedules that included future years.

---

[32] 133 Wn.2d 39, 56, 940 P.2d 1362 (1997).
[33] Littlefield, 133 Wn.2d at 44-46.
[34] Littlefield, 133 Wn.2d at 57.
[35] See, e.g., Pape, 139 Wn.2d. at 697.

ii. Autism Spectrum Diagnosis

Goodman claims that the court could not have satisfied the requirements of RCW 26.09.187(3)(a)(iv) when it adopted the residential schedule because it could not evaluate the emotional needs and developmental level of A.P. without knowing whether or not A.P. was on the autism spectrum. She also asserts that the court should have delayed its decision or held a review hearing after A.P. was diagnosed.

A superior court has authority in limited cases to adopt a temporary parenting plan if it finds that this is in the best interest of the child.[36] But our courts presume that it is better for the children to have a permanent parenting plan in place sooner rather than later.[37]

Goodman does not show that the court abused its discretion by declining to delay the adoption of a permanent parenting plan. Without supporting authority, she asserts that an autism spectrum diagnosis requires a delay in the adoption of a permanent parenting plan. Given the presumption that early adoption of a permanent parenting plan is in the best interest of the child[38] and

---

[36] Possinger, 105 Wn. App. at 336-37.
[37] Possinger, 105 Wn. App. at 336-37.
[38] Possinger, 105 Wn. App. at 336-37.

the high deference we give to a superior court decisions about parenting plans,[39] Goodman does not meet her burden.

### Judge Richardson

Goodman appeals the September 13, 2017, order granting Parsons's request for clarification of the permanent parenting plan.

On May 5, 2017, Parsons requested clarification of the permanent parenting plan. Specifically, Parsons asked that specific ages be added to state when each of the three phases of the residential schedule became effective. He noted that the original permanent parenting plan adopted October 25, 2016, included charts with the following categories: "8.a. Children under School-Age (from present until age 3)," "b. School-Age Children (from age 3 to age 5)," and "c. School-Age Children (age 5 and up)." The amended parenting plan of November 16, 2016, included three categories: "8.a. Children under School-Age," "b. School-Age Children," and "c. School-Age Children," with no age specified for any category. The court determined that the amended parenting plan of November 2016 was ambiguous. The court added the ages, noting it was clarifying the plan and not modifying it. It also instructed the parties to obtain this

---

[39] Black, 188 Wn.2d at 127.

court's permission to implement its decision because Goodman's appeal of earlier decisions was pending.[40]

We have resolved Goodman's claim that the court could not consider Parsons's request because it did not describe a particular ground listed in CR 59(a). Goodman challenges the court's conclusion that the November 2016 final amended parenting plan was ambiguous and contends that the court had to enter specific findings supporting its decision. She also contends that the court improperly modified the plan rather than clarifying it.

When parties cannot agree about the meaning of a parenting plan provision, the court may clarify the plan by adding more specific terms that identify each party's rights within the scope of the original plan.[41] If a court decides that clarification is warranted, it uses contract and statutory rules of construction to evaluate the interpretations presented by the parties.[42] The court reviews the subject matter, objectives, circumstances of the plan, and the later behavior of the parties to evaluate the document as a whole and determine what

---

[40] RAP 7.2(e).
[41] Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969).
[42] Berg v. Hudesman, 115 Wn.2d 657, 666-67, 801 P.2d 222 (1990); In re Marriage of Gimlett, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981).

clarification is appropriate.[43]  Unlike contract analysis, because a parenting plan

is a court order, it is not construed against the party asking for the clarification.[44]

A clarification of visitation rights does not extend the rights of one party

beyond the scope of the original parenting plan nor does it deprive a party of

rights granted by the original plan.[45]  It defines the rights of the parents

established in the parenting plan.[46]  In contrast, a modification changes the rights

of the parties so that the scope of each changes from the original plan.[47]  A court

abuses its discretion when it modifies a plan without a showing of "material

change in the condition or fitness of the parties or the welfare of the children

would be promoted thereby."[48]

The court determined that the amended parenting plan was ambiguous

because "without the ages . . . it leaves the parties to guess what 'under school-

age' and 'school-age' are meant to be."  The court noted Judge Downing's

retirement made him unavailable to clarify his intent, if any, when he omitted the

---

[43] Berg, 115 Wn.2d at 666-67.
[44] Goodman cites Berg to support her contention that a parenting plan is construed against the person who moved for it.  Nothing in this case supports her contention.  Rather, it directs the court to adopt the interpretation that would make it "reasonable and just," which is what the court did here.  Berg, 115 Wn.2d at 672 (quoting Fisher Props., Inc. v. Arden-Mayfair, Inc., 106 Wn.2d 826, 837, 726 P.2d 8 (1986)).
[45] Rivard, 75 Wn.2d at 418.
[46] Rivard, 75 Wn.2d at 418.
[47] Rivard, 75 Wn.2d at 418.
[48] Rivard, 75 Wn.2d at 418-19.

ages from the category headings in the amended plan. Nothing indicates that Judge Downing removed the ages in response to Parsons's earlier request. For these reasons, Judge Richardson granted the clarification request to insert the child's age in category headings.

We note that the original permanent parenting plan and Dr. Wheeler's recommended schedule, except for optional phase 4, are identical to the plan the court clarified on September 13, 2017.

Goodman contends that the court abused its discretion by modifying rather than clarifying the order. She provides a calculation of the hours she contends she is losing and Parsons is gaining to show that the court changed the scope of the order. To make these calculations, she does not use the original permanent parenting plan or Dr. Wheeler's recommendations. Instead, she claims that the parties understood that the second phase of the amended final parenting plan was to start when A.P. was five rather than three. But she provides no evidence of this mutual understanding.

The court acted well within its discretion to decide that the original permanent parenting plan and parenting evaluation described the court's intended residential schedule and that the lack of ages on the amended permanent parenting plan was an unintended error.

Attorney Fees

Both parties request an award of attorney fees. Neither has adequately complied with the requirements of RAP 18.1(b). We deny both requests.

CONCLUSION

Goodman fails to demonstrate that the court abused its discretion by making any challenged decision. Substantial evidence supports each challenged finding of fact. We affirm.

_Leach, J._

WE CONCUR:

_Smith, J._                     _Appelwick, C.J._